## SINCLAIR REFINING CO. et al. v. SMITH et al.

(Circuit Court of Appeals, Fifth Circuit. June 9, 1926.)

No. 4446.

1. **Navigable waters** ⬛➡39(4)—**Decree requiring defendants to dredge channel to depth existing before other dredging operations by them held not objectionable, as requiring continued dredging.**

Decree in suit to compel defendants to dredge channel to depth which had obtained before other dredging operations conducted by them, which enjoined them from "interfering with the riparian rights of complainants by causing, maintaining, or permitting to remain any mud, dirt, clay, silt," etc., *held* not objectionable on ground that expression "permitting to remain" would require future dredging after it had repaired the damage complained of.

2. **Appeal and error** ⬛➡466—**Requirement in supersedeas bond that defendants, appealing from decree requiring them to dredge channel, pay complainants actual damages or $500 a month until injunction was complied with, held not improper.**

In suit to compel defendants to dredge channel to depth which had obtained before other dredging operations by them, requirement of supersedeas bond, after decree for complainants, that defendants pay actual damages or $500 per month until mandatory injunction was complied with, in case of affirmance, *held* not improper.

3. **Names ⬡10—That complainant, with another, was conducting business under a fictitious name, whereas certificate filed under statute recited that he alone was doing business under that name, held not to require dismissal of suit (Rev. St. Tex. 1925, art. 5924).**

That complainant, in suit to compel defendants to dredge channel to depth which had obtained before other dredging operations by them, with another, was engaged in business under a fictitious name, whereas the certificate filed by him under Rev. St. Tex. 1925, art. 5924, recited that he alone was conducting the business under such name, *held* not to require a dismissal of the suit, and court's action in permitting the other person interested in business to intervene proper.

4. **Names ⬡10—Statutes requiring filing of certificate setting forth assumed name under which business is being conducted, held subject to strict construction, and not to be extended by implication (Rev. St. Tex. 1925, art. 5924; Pen. Code Tex. 1925, art. 1070).**

Rev. St. Tex. 1925, art. 5924, requiring person doing business under assumed name to file certificate setting forth such name and Pen. Code Tex. 1925, art. 1070, imposing penalty, are to be strictly construed, and cannot by construction be extended to take away property rights or invalidate contracts.

5. **Navigable waters ⬡39(4)—Evidence held to show defendants' dredging operations were proximate cause of shoaling in channel.**

Evidence *held* to show that defendants' dredging operations were the proximate cause of all shoaling in channel, and hence it was no defense to suit to compel defendants to dredge channel that part of silt deposited was put in water by another than defendant.

Appeal from the District Court of the United States for the Southern District of Texas; Joseph C. Hutcheson, Jr., Judge.

Suit by Alonzo Smith and another against the Sinclair Refining Company and others. Decree for plaintiffs, and defendants appeal. Affirmed.

Maco Stewart, Albert J. De Lange, Walter H. Walne, and Jas. L. Shepherd, Jr., all of Houston, Tex. (Stewart, De Lange & Milheiser and Baker, Botts, Parker & Garwood, all of Houston, Tex., on the brief), for appellants.

Robert L. Sonfield and Maurice Epstein, both of Houston, Tex. (Taliaferro, Epstein & Sonfield, of Houston, Tex., on the brief), for appellees.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

BRYAN, Circuit Judge. This is an appeal from a decree requiring appellants to dredge out a portion of Lower Clinton Bend, adjacent to the shipyard of appellees, to the depth which obtained at the time appellants began their dredging operations upon their property, which was located on the bend just below the above-mentioned shipyard. The decree also awards to appellees $6,000 as damages which had accrued up to its date for the loss of the use of their property, and required appellants to give a $15,000 supersedeas bond, conditioned to comply with the terms of the mandatory injunction, and to pay to appellees, at their option, actual damages, or $500 per month, until the mandatory injunction by affirmance should become operative.

[1] The language of the decree is objected to because it enjoins appellants from "interfering with the riparian rights of complainants by causing, maintaining, or permitting to remain any mud, dirt, clay, silt," etc., so as to interfere with the depth of the channel of that part of Lower Clinton Bend used in connection with the shipyard. It is said the expression "permitting to remain" would require future dredging by appellants after they had repaired the damage complained of; but clearly that expression was used to require compliance with the mandatory feature of the injunction, and did not require appellants to do anything further after they had complied with the decree by once restoring the depth of water as it existed before they began their operations.

[2] Objection is also made to the requirement in the supersedeas bond that, until the injunction should be complied with, appellants should pay to appellees actual damages, or $500 per month, because it is said that appellees may not suffer any future damage, and that recovery thereof is not asked for by the bill of complaint. The allowance is not attacked as excessive, and the requirement was proper, because the trial court was attempting to do full and complete justice without the necessity of another suit. Every condition of the bond was made contingent upon an affirmance of the decree.

[3] The right of appellees to maintain the suit was attacked upon two grounds: The first is that the marine way of appellees obstructs a navigable stream, in violation of an act of Congress. Lower Clinton Bend is navigable, but the uncontradicted evidence discloses that the marine way does not enter the channel. It was built in an artificial slip that had been dredged out. The second ground is that appellees engaged in business under the assumed name of Clinton Shipyard, in violation of an act of the Legislature of Texas, which provides that no person shall conduct business under an assumed name, unless he

shall file in the office of the county clerk in which the business is conducted a certificate setting forth the name of each person conducting or transacting such business. Rev. St. Tex. 1925, art. 5924. A violation of this statute is punishable by a fine of not less than $25 or more than $100. Penal Code Tex. 1925, art. 1070.

The bill was filed by Alonzo Smith, one of appellees, who filed a certificate that he alone was conducting and transacting business under the name of Clinton Shipyard. On cross-examination, Smith admitted that he and Washburn, the other appellee, were partners. He stated that he was actively in charge of the business; that Washburn went to Mexico and left it to him to run the business as he saw fit, and it was his intention to run it by himself. Thereupon appellants moved to dismiss the suit, but the court denied the motion, and permitted Washburn to intervene as a party complainant. We think the ruling of the court was right. The statute does not purport to take away rights of property, nor to render contracts void, and is not to be extended by construction.

[4] On the other hand, it is to be strictly construed. The certificate filed by Smith was in proper form, and literally complied with the requirement of the statute. It truthfully stated, according to the evidence, that Smith was conducting the business. It is true, he went further and certified that he was the sole owner, when as a matter of fact he was not, though the statement was made under circumstances which might justify the belief that Washburn had given up his interest in the business.

[5] We now come to the merits of the case. Lower Clinton Bend is U-shaped, and was eliminated from the Houston Ship Channel by a cut-off of approximately 2,400 feet. There was thus formed a crescent-shaped island on the south or right bank of the channel, the current of which at this point flows in an easterly direction toward the Gulf. The current in the channel, as well as in Lower Clinton Bend, is affected by the tide. The shipyard of appellees is on the western end of the island, some 700 feet down stream on the bend from the ship channel. Just opposite the shipyard, Simms Bayou flows into the bend from the west. On April 11, 1923, the depth of water in front of the shipyard, and from there up the Bend to the ship channel, was about 12 feet on the average, but gradually became less, until it was not more than an average of 5 feet down stream to the lower end, where the bend enters the ship channel. At that time appellants began dredging out the lower part of the bend, and placed a dumping ground protected by a levee with two spillways, the upper one from 400 to 500 feet and the lower one about 1,800 down stream from the shipyard. These spillways returned the water into the bend. The upper one was headed up stream toward the shipyard, and was used continuously from April 25 until May 16, and again from May 27 to June 1, on which latter date appellants completed their dredging operations. On May 4 there was a break in the levee about 700 feet below the shipyard, which permitted considerable material that had been dredged out to return to the channel of the bend. On June 4 there was not enough depth of water to take a small vessel, drawing 4 or 5 feet, onto the marine railway of appellees.

The government took soundings on July 31, and it was found that shoaling had taken place in the bend both above and below the shipyard. The extent of the shoaling above and in front of the shipyard was about 4 feet on the average, and gradually decreased below from 2 or 3 feet to about 1 foot. Soundings taken in December disclosed that there had been an additional shoaling of about 1 foot on the average. From January to September, 1923, government engineers were dredging out the ship channel above the upper end of Lower Clinton Bend. They used a dump on the south side of the channel on the spillway, which entered the channel about 1,500 feet above the upper end of Lower Clinton Bend. For about 10 days, beginning May 26, water from this dump overflowed and ran across a grassy flat some 1,200 or 1,500 feet, and into Simms Bayou at a point 4,000 feet west of the entrance of that bayou into Lower Clinton Bend.

There was no appreciable deposit until within about 1,500 feet of the bend, but from that point easterly shoaling began, and gradually increased in depth to the mouth of the bayou. Expert engineers, called by both sides, seemed to agree in their testimony that, when an obstruction is placed in a stream it tapers away on the opposite side from the agency that causes it. In the latter part of January, 1923, one of the appellees complained to the government engineers of shoaling in the upper bend between Simms Bayou and the ship channel, which he attributed to silt from the government spillway. No complaint was made of shoaling at or below the entrance of Simms Bayou into the bend, and the shoaling had disappeared before appellants began their dredging operations. The

government had been dredging out the ship channel at this point for several years prior to the dredging operations of appellants, and during that time there had been no appreciable shoaling or filling up in the bend.

In rendering his decision, the District Judge stated that he held appellants liable for the whole damage, "on the theory that, whatever other causes were operating to produce the filling, the Sinclair Company contributed a substantial part of it, and that, when the action of parties, though independent in origin and purpose, are united in results, either one of them can be held responsible for the damage caused."

Appellants insist that the theory of the law which the court adopted is an erroneous one, and cite authorities to support the contention that entire damages, which are not direct, but are consequential, are not recoverable against one of several tort-feasors, where there is no concert of action, but each tort-feasor is acting independently of the others. It is argued that in such cases the plaintiff must fail in his action unless he can show what part of the damage done was caused by the tort-feasor whom he sues.

In this case it is said there can be no recovery for the reasons that the damage was consequential, there was no concert of action, the court found that appellants contributed only a part of the damage, and the evidence fails to show what part of it was caused by them. In our opinion it is established by the great weight of the evidence that the dredging operations of appellants constituted the proximate cause of *all* the shoaling complained of, and was not one of several contributing causes. Appellants furnished the efficient cause, and there was an unbroken connection between it and the injury, and this was sufficient to fasten liability, unless there was some intervening independent cause. Insurance Co. v. Tweed, 7 Wall. 44, 19 L. Ed. 65; Insurance Co. v. Transportation Co., 12 Wall. 194, 20 L. Ed. 378; Milwaukee, etc., Ry. Co. v. Kellogg, 94 U. S. 469, 24 L. Ed. 256.

It is at least doubtful whether the dredging done by the government caused any silt to be added to that turned into Lower Clinton Bend by appellants. The government had been for years dredging in the immediate locality, and its operations had not resulted in shoaling the channel of the bend, except for a short distance between Simms Bayou and the ship channel, and that shoaling was merely temporary, as the current was sufficient to restore the usual depth. It is true that, after appellants had ceased dredging, the shoaling somewhat increased; but that was to be expected as an obstacle to the free action of the waters was then in the channel. It is unreasonable to suppose that the overflow of water from the government dump more than a mile away had any appreciable effect at the place where the shoaling occurred, in face of the fact that the spillway of appellants supplied an efficient cause immediately at hand.

The government dredging was being done throughout the entire period of the dredging operations carried on by appellants. If silt was being held in suspension in the waters of the bend, either by reason of the government work or from natural cause, a condition existed which it was the duty of appellants to take into consideration, and it is no defense that this condition increased the amount of shoaling; for, if appellants caused the shoaling to take place, they ought not to be excused merely by showing that the silt which they put into the water caused to be deposited also the silt put into the water by the government. The proximate cause was furnished by appellants, because without that cause the shoaling would not have resulted. Insurance Co. v. Boon, 95 U. S. 117, 24 L. Ed. 395; The G. R. Booth, 171 U. S. 450, 19 S. Ct. 9, 43 L. Ed. 234.

The decree is affirmed.