## THE JAMAICA.

### NIAGARA FERRY & TRANSPORTATION CO., Inc., v. AMERICAN RADIATOR CO. et al.

### SALKELD et al. v. NIAGARA FERRY & TRANSPORTATION CO., Inc.

### AMERICAN RADIATOR CO. v. PERRY'S SAND YARD, Inc., et al.

District Court, W. D. New York.

July 10, 1931.

On Rehearing Aug. 15, 1931.

Dorr E. Warner, of Cleveland, Ohio, Forrest E. Single, of New York City, and Goulder, White & Garry, of Cleveland, Ohio (Thomas H. Garry, of Cleveland, Ohio, of counsel), for Victor Salkeld and others.

Stanley & Gidley, of Buffalo, N. Y. (Ray M. Stanley, of Buffalo, N. Y., of counsel), for the Jamaica and Niagara Ferry & Transportation Co., Inc.

Dorr E. Warner, of Cleveland, Ohio (Harry J. Kelly, of Buffalo, N. Y., of counsel), for Perry's Sand Yard, Inc.

Wilcox & Van Allen and Brown Ely & Richards, all of Buffalo, N. Y. (John B. Richards and Selby G. Smith, both of Buffalo, N. Y., of counsel), for American Radiator Co.

Love & Keating, of Buffalo, N. Y. (George P. Keating, of Buffalo, N. Y., of counsel), for Delbert O. Lockhart.

ADLER, District Judge.

These cases arose out of the sinking of the steamer Jamaica at the Hertel avenue dock of the American Radiator Company on April 16, 1926. Approximately three hundred feet of the face of the dock had been leased by the American Radiator Company to the Perry's Sand Yard. There was a slip extending in from the dock which was not included in the lease to the sand company. In this slip the steamer George King was moored, and had been there for some time prior to April, 1926. The steamer King was owned by Victor Salkeld and Dorr E. Warner, the libelants herein. Warner was also the principal owner of the Perry's Sand Yard which had the lease to the dock. Neither he nor the Sand Yard had a lease to the slip in which the King was moored, and so far as the presence of the King in the slip is concerned, it may be said to have been there by sufferance, though apparently with the consent of the radiator company. Just prior to April 13, 1926, the Niagara Ferry & Transportation Company, Inc., the owner of the steamer Jamaica, applied to the American Radiator Company for dockage in the slip in question. The owners of the King did not want to move their ship at this time, and after a conference with the owners of the Jamaica it was agreed that the radiator company should lease dock space for the Jamaica on the dock front and the King could then remain in the slip until it was ready to be moved. The Jamaica was brought up to the dock on April 13, and moored so that some part of it extended a distance in front of the slip. While in that position on April 16, 1926, the Jamaica sank, and the entrance to the slip was then blocked so that the steamer King moored in the slip could not get out. The Niagara Ferry & Transportation Company, owner of the Jamaica, took steps to have her raised, but she was not actually raised and moved from her position in front of the slip until June 16, 1926, two months after her sinking.

The libelants, Victor Salkeld and Dorr E. Warner, in the first libel brought an action in rem against the steamer Jamaica. They later filed a second libel against the Niagara Ferry & Transportation Company, Inc., the owner of the Jamaica in personam. The Niagara Ferry & Transportation Company, Inc., appeared as claimants and filed an answer. It further filed petitions in both cases bringing in Delbert O. Lockhart on the ground that he was an independent contractor for raising the Jamaica; the American Radiator Company on the ground that it had provided unsafe wharfage; the Perry's Sand Yard, Inc., upon the ground that it had aided in the creation of a hidden obstruction along the dock; and the steamer George King on the same ground that the Perry's Sand Yard was brought in.

Upon the trial no attempt was made to prove unsafe wharfage against the American Radiator Company or negligent creation of hidden obstructions along the face of the dock by the Perry's Sand Yard or the steamer George King. The cross-libels are therefore dismissed. Further, the libel in the action in rem will be dismissed and the merits disposed of in the action in personam.

I will first pass upon the question of whether the owner of the Jamaica promptly commenced and diligently prosecuted the raising and removal of the vessel. From a careful examination of the testimony, I conclude that the vessel's owner did promptly enter into a contract with a presumably responsible salvor for the raising of the vessel. The testimony offered by the libelants has not convinced me that the work was not properly performed or diligently prosecuted. My conclusion is that the owner of the Jamaica was not in any particular at fault in the raising of the vessel.

The next question is: Did the Jamaica sink through the negligence of its owner? It was found on the morning of April 16, after the vessel had been moored to the dock for three days during which time the water and weather conditions were not unusual, that it was sinking rapidly. Siphons promptly put

into the ship had little effect and she sank to the bottom in a short time. There was no testimony introduced at the trial on the question of the unseaworthiness of the Jamaica, and there was no testimony introduced by the respondents to rebut the presumption of unseaworthiness. The unexplained · sinking of a vessel in her berth raises a presumption of unseaworthiness. Dupont de Nemours v. Vance, 19 How. (60 U. S.) 162, 15 L. Ed. 584. Unseaworthiness is a breach of warranty to those with whom the vessel's owner enters into some contractual relation. In the case before us there was no contractual relation between the owner of the Jamaica and the libelants. If there is any liability or fault upon which the libelants can rely, it must be that the Jamaica sank by reason of the negligence of its owner. She sank unexpectedly from an unexplained cause, and following the reasoning of Judge Hough in The Kathryn B. Guinan which is set forth in the report of that case in the Circuit Court of Appeals of this Circuit in 176 F. 301, 303, this raises a presumption of negligence. Judge Hough says: "I think it does, because the sinking of a vessel in calm weather, to the injury of third parties, is one of those unusual circumstances, from its nature unexplainable by third parties, to which the rule 'res ipsa loquitur' applies. The reasoning of Rose v. Stephens, etc., Co. (C. C.) 11 F. 438 (respecting the explosion of a boiler), seems to me wholly applicable. But the presumption so raised is rebuttable."

■ In the Guinan Case the court found that the presumption was rebutted. In the instant case no testimony was offered to rebut the presumption of unseaworthiness or the presumption of negligence. I must find therefore that the sinking of the Jamaica was due to the negligence of her owner, so far as injured third parties are concerned.

■ The Jamaica, moored at the face of the dock with a part of it blocking the opening into the slip sank so that libelants' ship King moored in the slip, was unable to come out and go about its regular business for a period of weeks, or until the Jamaica was raised and moved. If the Jamaica sank through the negligence of its owner, the liability to third parties injured by reason of the sinking is a liability at common law. Dee Conservancy Board v. McConnell, [1928] 2 Kings Bench Division, 159; The Ella, Law Reports, (1915) 111.

The Ella through her negligent navigation came into collision and sank a barge within the port of Southampton. The wreck was abandoned by its owners, and the Harbor Authority who were the plaintiffs in this case brought action against the owners of the Ella for the expense of removing her. The president of the court (Sir Samuel Evans) held that persons who by their negligence sank in the Harbor of Southampton another vessel which thereby became an obstruction to the harbor, and which the Harbor Authority therefore removed, were liable at common law for the cost of its removal. He states that: "The common law with reference to obstructions caused by wrecks of vessels sunk through misfortune without any fault of their owners is settled by the well-known cases of Brown v. Mallett, [1848] 5 C. B. 599; White v. Crisp [1854] 10 Ex. 312; and The Crystal, [1894] A. C. 508; but the question now before the Court is as to the law applicable in cases of obstructions or nuisances in navigable channels caused not through innocent misadventure but by negligence and improper acts." In this connection he quotes the language of Mr. Justice Maule in the case of Brown v. Mallett, 5 C. B. 599, in which he uses the following language: "It is the duty of a person using a navigable river with a vessel of which he is possessed and has the control and management, to use reasonable skill and care to prevent mischief to others." (and he adds) "His liability is the same whether his vessel be in motion or stationary, floating or aground, under water or above it."

This statement of duties and obligations of navigators of vessels was adopted by the Court of Exchequer in the case of White v. Crisp, 10 Ex. 312.

The principle enunciated in The Ella was followed in Dee Conservancy Board v. McConnell, supra, decided in the Court of Appeal, King's Bench Division, as recently as 1928. In this case, two of the three Justices of the Court of Appeal who wrote opinions questioned and distinguished the case of The Utopia, A. C. 492 (1893), which together with The Snark (1899) Probate, page 74, at page 80, are relied upon by respondents. The court says: "In The Utopia a vessel had sunk in the Straits of Gibraltar and without negligence, and the question was whether another vessel, which subsequently ran on to her where she lay could recover damages. No question was raised whether the owners of the sunken vessel would have been liable if she had sunk through negligence. Sir Francis Jeune states a general proposition, part of which was not necessary for the decision,

because the facts did not raise it; he said, 'The owner of a ship sunk whether by his default or not (wilful misconduct probably giving rise to different considerations) has not, if he abandoned the possession and control of her, any responsibility either to remove her or to protect other vessels from coming into collision with her.' It will be observed that he did not say that the owner of a vessel sunk by his default is under no liability to those damaged by the sunken vessel; he says that the owner of a ship sunk, whether by his default or not, is under no liability to remove her or to protect other vessels from coming into collision with her. * * * If in the Utopia Sir Francis Jeune meant, in the passage I have quoted, to say that if the owner of a ship has abandoned her, he is under no liability for damage caused by his negligence, I respectfully disagree with his view, being as it is, against that expressed by Lord Herschell in The Crystal (1894) A. C. 508. A common-law liability for negligence cannot be wiped out by abandoning that which has caused the damage. If Sir Francis Jeune was really thinking of this point—I do not think he was—his remark is obiter. * * * I therefore see no difficulty in the way of the present respondents, one of whom is the owner of the soil with the right to take tolls for navigation and the duty to keep the navigation open, and the other is the owner or licensee of, with an interest in, a wharf, the use of which has been obstructed by the appellants' ketch having ground alongside and so stopping access to the wharf, recovering damages directly caused by the appellants negligence."

The conclusion arrived at by all of the Justices who wrote in this case is that the ketch having sunk through the negligence of the defendants, they became liable at common law for the damage caused by the obstruction to the navigation of the river and the blocking of the approach to the second plaintiffs' wharf.

I am led to the conclusion that libelants are entitled to such damages as they may be able to prove which were directly caused by the sinking of the Jamaica. I base this conclusion upon the common-law liability of the respondents for negligence. I have found negligence, as previously indicated in this opinion, through the unexplained sinking of the Jamaica, and there being no testimony of any sort to rebut the presumption of unseaworthiness and negligence.

A decree may be entered in accordance with this opinion.

If this opinion be deemed an insufficient compliance with Admiralty Rule 46½ (28 USCA § 723), findings and conclusions may be settled on notice.

On Petition for Rehearing.

The libelants, Victor Salkeld and Dorr E. Warner, and the respondent, Niagara Ferry & Transportation Co., Inc., have each petitioned for a rehearing or for the modification of the opinion and decision of this court rendered herein on July 10, 1931.

The petition of the libelants asks for a modification or reversal of that part of the opinion which states and decides that "the libel in the action in rem will be dismissed and the merits disposed of in the action in personam." I have further considered this question, and have had my attention called to the opinion of Judge Hazel rendered December 6, 1926 (D. C.) 51 F.(2d) 857, in this same action. Exceptions to the libel herein were then presented to him on the ground that the facts alleged were insufficient to constitute an action in rem. I have concluded to follow Judge Hazel's reasoning. I therefore change my decision with the effect of striking out from my opinion the above-quoted phrase dismissing the action in rem.

The entry of a decree in the in rem action will, however, be suspended until after the entry of a final decree in the suit in personam. In case libelants are unable to satisfy their claim for damages as finally determined in the suit in personam, they will be permitted to proceed in the suit in rem and have recourse against the security posted by the respondent in that suit.

Upon respondents' petition for rehearing, I have studied the points and arguments set forth in the memorandum filed with the petition. I find no reason for modifying my opinion as previously filed.

As to libelants' petition, modification of the opinion is made as hereinbefore set forth. As to respondents' petition, the petition for rehearing is denied.