631 F.2d 441
 In the Matter of the Complaint of BETHLEHEM STEEL CORPORATION, etc.
BETHLEHEM STEEL CORPORATION, Plaintiff-Appellee-Cross-Appellant,
v.
MARRIOTT CORPORATION et al., Claimants-Appellants-Cross-Appellees.
 Nos. 78-3137, 78-3138.
 United States Court of Appeals,
Sixth Circuit.
 Argued April 9, 1980.
Decided Oct. 2, 1980.
 
 Thomas O. Murphy, Thompson, Hine & Flory, Cleveland, Ohio, for claimants-appellants-cross-appellees.
 John H. Hanninen, Ray, Robinson, Keenen & Hanninen, Lucian Y. Ray, Cleveland, Ohio, for plaintiff-appellee-cross-appellant.
 Before EDWARDS, Chief Judge, and LIVELY and ENGEL, Circuit Judges.
 LIVELY, Circuit Judge.
 
 
 1
 This admiralty case presents several issues related to limitation of liability[1] which have not been decided previously by this court.
 
 I.
 
 2
 The Steelton, a Great Lakes steamship owned by the plaintiff Bethlehem, collided with a highway bridge which spanned the Welland Canal. The Welland Canal lies wholly within the territorial boundaries of Canada. The bridge, owned by the St. Lawrence Seaway Authority, was extensively damaged and the canal was completely blocked for approximately two weeks. A number of ships were required to interrupt their voyages and stand by until the canal was cleared. Shortly after the collision Bethlehem filed an action in the Federal Court of Canada for limitation of liability under Canadian law, naming as defendants the Seaway Authority "and all other persons having claims against the plaintiff, its ship 'Steelton' or the fund hereby to be created." The Canadian court entered an order limiting liability to $671,489 (Canadian), plus interest to date of deposit. Bethlehem deposited with the Canadian court $680,733, including interest ($691,761 (U.S.)). The Canadian court stayed all further proceedings arising out of the collision and entered a notice with provision for publication, requiring all persons who claimed damage from the collision to file their claims with that court.
 
 
 3
 A number of actions asserting claims arising out of the Steelton incident were filed against Bethlehem in the United States District Court for the Northern District of Ohio. Thereafter Bethlehem filed the present action in that court petitioning for limitation of liability under 46 U.S.C. § 185[2] while claiming the benefit of the lesser limitation provided by the Canada Shipping Act.[3] The district court then ordered all persons claiming damage from the Steelton incident to file claims with it, and enjoined the institution and prosecution of any actions arising from the incident, except the instant proceeding and the one already pending in the Federal Court of Canada. The total claims filed in the two actions were far in excess of the amount available for their satisfaction under the limitation provisions of either Canadian law or 46 U.S.C. § 183.
 
 II.
 A.
 
 4
 The district court recognized the general rule that the right to recover for a tort is governed by the law of the place where the tort occurred. At the same time, the court recognized that the law of the forum determines procedural matters. Thus, the district court convened a hearing to determine whether the Canadian limitation law is substantive or procedural. Both Bethlehem and the claimants produced expert witnesses, Canadian attorneys, who agreed that there are no Canadian cases which define the nature of the limitation law. However, the experts disagreed in their opinions on the nature of the law, Bethlehem's witness proclaiming it substantive and the claimants' witness labeling it procedural.
 
 
 5
 After considering the expert testimony and several English decisions, the district court concluded that "the limitation of liability provisions of the Canada Shipping Act are procedural and do not attach to the rights created by that Act." Thus, the court held that 46 U.S.C. § 183, the law of the forum, determines the maximum limitation of the fund created in this action. The effect of this ruling was to set Bethlehem's potential liability at $850,000 rather than.$691,000. This is the holding from which Bethlehem has filed its cross-appeal.
 
 B.
 
 6
 The judgment was first appealed by a group of shipowners and charterers whose claims were dismissed by the district court. The claimants, of which Marriott Corporation is one, are owners and charterers of vessels which were detained by reason of the obstruction of the Welland Canal following the Steelton's collision with the bridge. During the pendency of the district court action, the Canadian trial court entered a judgment dismissing all claims filed in that court based on detention of vessels. The judge of that court, Justice Addy, found that under Canadian law when a claim is only for economic loss, with no actual physical injury to the claimant, damages are generally not recoverable even where the injury might have been foreseeable and a proper causal relationship between act and injury exists. A case from the Supreme Court of Canada, Rivtow Marine Ltd. v. Washington Iron Works, (1974) S.C.R. 1189, (1973) 6 W.W.R. 692, was distinguished on the ground that "a proximity of relationship giving rise to a duty to warn" justified an award of damages for economic loss unaccompanied by physical injury in that products liability case. Concluding that the ruling of Justice Addy in a case involving the identical facts and legal issue presented in the instant case stated the controlling law of Canada, the district court held there could be no recovery for economic loss resulting from vessel delay. This holding presents the second issue for determination on this appeal.[4]
 
 III.
 
 7
 In Ocean Steam Navigation Co. v. Mellor (The Titanic), 233 U.S. 718, 34 S.Ct. 754, 58 L.Ed. 1171 (1914), the primary question was whether the owner of a foreign ship may limit its liability for losses on the high seas by resort to the courts of the United States. The Supreme Court held that when a foreign ship is sued in the courts of this country it may invoke limitation under U.S. law. This is so even though the foundation for recovery is a British tort and under the circumstances of the case the ship in not subject to the substantive law of the United States.
 
 
 8
 Lower court decisions following Titanic have concluded that limitation of liability statutes relate to remedy rather than to liability or the right to recover. E. g., Royal Mail Steam Packet Co. v. Companhia de Navegaco Lloyd Brasileiro, 31 F.2d 757 (E.D.N.Y.1928), aff'd, 55 F.2d 1082 (2d Cir.), cert. denied, 287 U.S. 607, 53 S.Ct. 11, 77 L.Ed. 528 (1932); The Mandu, 102 F.2d 459 (2d Cir.1939). The Supreme Court cast some doubt on the accepted rule of The Titanic in Black Diamond Steamship Corp. v. Robert Stewart & Sons, Ltd. (Norwalk Victory), 336 U.S. 386, 69 S.Ct. 622, 93 L.Ed. 754 (1949). In that case the only issue decided was the amount of bond required to be posted in the United States district court by the shipowner seeking to limit its liability for losses which occurred in foreign waters. The plaintiff sought limitation under the Brussels Convention and tendered a bond which would have satisfied the requirements of the Convention. The district court dismissed the action for failure to post the larger bond required by the American limitation statute. The Supreme Court reversed and remanded with directions to set aside the dismissal and make a determination of which limitation provision to apply. The Court also required the plaintiff to post the larger American bond to preserve the status quo pending appeal from the district court's ultimate decision. Norwalk Victory recognizes that the limitation statute of the forum does not always apply-contrary to the assumption of a number of courts following The Titanic. In looking at "the question whether there are any circumstances under which the Belgian limitation would be enforceable by our courts," the Supreme Court stated, ". . . if, indeed, the Belgian limitation attaches to the right, then nothing in The Titanic, 233 U.S. 718, 34 S.Ct. 754, 58 L.Ed. 1171, stands in the way of observing that limitation." 336 U.S. at 395, 69 S.Ct. at 626.
 
 
 9
 In Norwalk Victory, Justice Frankfurter did not disagree with the rule of The Titanic. He noted that the Court was dealing in that case with "a liability assumed already to exist on other grounds." Id. On the other hand, the district court in Norwalk Victory dismissed on the assumption that the law of the forum controlled because limitation laws are always procedural. Upon remand the district court was to determine "if it is the law of Belgium that the wrong creates no greater liability than that recognized by the Convention . . . ." Id. In other words, an American court may not assume that a foreign limitation of liability act is procedural. It must make a determination whether an independent basis of liability exists or whether under that nation's law "the wrong creates no greater liability than that recognized . . ." by the limitation act. If the right to recover is coextensive with the limitation on amount of recovery, then a limitation act is substantive and must be enforced by the forum. Viewed in this light Norwalk Victory does not represent a departure from the doctrine of The Titanic. Rather, it commands an inquiry into the nature of a foreign limitation act where it may not be assumed that liability already exists on other grounds.
 
 
 10
 In Kloeckner Reederei Und Kohlenhandel G.M.B.H. v. A/S Hakedal (The Western Farmer), 210 F.2d 754, 757 (2d Cir.1954), Judge Learned Hand wrote, "The Titanic . . . finally settled it for us that such statutes (limitation acts) are part of the remedy, and that the law of the forum applies." He found nothing in Norwalk Victory which qualified this rule. Implicit in the holding is the assumption that liability for the tort existed on other grounds.
 
 
 11
 In Petition of Chadade Steamship Co. (The Yarmouth Castle), 266 F.Supp. 517 (S.D.Fla.1967), the Panamanian owner of a cruise ship which burned and sank on the high seas petitioned a United States court for limitation of liability. The district court followed the procedure directed by the Court in Norwalk Victory and received expert testimony on the nature of the Panamanian limitation law. The court stated its conclusion as follows:
 
 
 12
 The limitation of liability contained in the Panamanian law is substantive rather than procedural and attaches specifically to the right.
 
 
 13
 266 F.Supp. at 522.
 
 
 14
 Perceiving no overriding public policy of the United States which precludes doing so, the court applied the limitation provision of the law of Panama. The court in Complaint of Ta Chi Navigation (Panama) Corp. S.A., 416 F.Supp. 371 (S.D.N.Y.1976), refused to follow The Yarmouth Castle, applied the limitations provision of the United States rather than the Panamanian limitation provision, and held that the decision in The Titanic "still is the controlling law in the instant case." Id. at 377.
 
 
 15
 It is not surprising that the cases have produced different results. The Titanic concerned a disaster on the high seas. Norwalk Victory, on the other hand, dealt with a collision in Belgian territorial waters. One case involved great loss of life, the other only property damage. In some cases the parties seeking to limit their liability have been insurers rather than shipowners. See Complaint of Ta Chi Navigation, supra, 416 F.Supp. at 379. In a field as complex as maritime tort law the choice-of-law problems are difficult, and the circumstances of each case determine the ultimate choices which the courts make. See M. Hancock, Torts in the Conflict of Laws, Ch. IX (1942).
 
 
 16
 The district judge in the present case followed the command of the Court in Norwalk Victory. Judge Krupansky received the testimony of Canadian lawyers and found the expert witness of the claimants the more persuasive. This witness stated his opinion that "the fixing of the amount or value of the Steelton's owner's limitation of liability is a matter of procedure and not a matter of substance." He stated that the Canadian limitation act provides for a "quantification" of damages, that it merely provides a procedural remedy for scaling down claims to the proportionate share of a limited fund. The witness supported his testimony with references to several English and Canadian decisions dealing with damages.
 
 
 17
 This court accepts the district court's conclusion that the Canadian limitation statute is procedural. This conclusion is supported by competent testimony. Furthermore, it represents a desirable choice-of-laws decision. The Steelton is an American ship. The parties who will be affected by this limitation decision chose to sue the Steelton's owner in a court of the United States rather than a court of Canada. Though the collision occurred in Canadian waters, insofar as the limitation between the present parties is concerned, the interest of the United States in applying its own legislatively determined concept of limitation is stronger than that of Canada. This appears to be a proper case for application of the law of the forum.
 
 IV.
 
 18
 The second issue concerns not the amount, but the right of the claimants to recover. The right to recover damages is a matter of substantive law which is controlled by Canadian law "in the absence of some overriding domestic policy translated into law . . . ." Norwalk Victory, supra, 336 U.S. at 396, 69 S.Ct. at 627. The claimants-appellants make a two-step argument. They assert, first, that the district court and the Canadian trial court erred in holding that under Canadian law a person may not recover purely economic losses resulting from another's negligence in the absence of physical damage to his person or property. The second contention is that even if the district court's construction of Canadian law is correct there is an "overriding domestic policy translated into law" which requires courts of this country to permit recovery in such circumstances.
 
 A.
 
 19
 The district court dismissed the claims for damages suffered by shipowners whose vessels were detained. In doing so the court relied primarily on the decision of the Canadian federal trial court which had dismissed similar claims arising out of this collision. In determining to follow the Canadian court the district court discussed two Canadian decisions: Rivtow Marine Ltd. v. Washington Iron Works, (1974) S.C.R. 1189 and Gypsum Carrier Inc. v. The Queen, (1978) 1 F.C. 147, 78 D.L.R. (3d) 175. Different, though not necessarily inconsistent, results were reached in the two cases. In Rivtow a claimant who had suffered no physical damage was permitted to recover for economic loss. In Gypsum Carrier such claimants were denied recovery. It is clear from reading the opinions in the two cases, with their comprehensive surveys of Canadian and English decisions on the matter, that there is no hard and fast rule in Canada which forbids recovery for economic loss in the absence of physical damage.
 
 
 20
 In Rivtow the Supreme Court of Canada emphasized that the tort which caused the loss of the claimants was failure by the manufacturer and distributor of defective equipment, who knew how and where the equipment would be used, to warn the purchaser of the defects. The court found that the loss of revenue suffered by the claimant was the immediate consequence of the breach of duty to warn. The court held that a "proximity of relationship" between the claimant and the defendants gave rise to the duty to warn and that loss of revenue was recoverable "as compensation for the direct and demonstrably foreseeable result of the breach of that duty." (1974) S.C.R. at 1215, 6 W.W.R. at 71.
 
 
 21
 The facts in Gypsum Carrier were similar to those in the present case. This ship damaged a railroad bridge, causing it to be closed for eight days. The claimants were railroads which had no proprietary interest in the damaged bridge, but which had contracts with the bridge owner permitting them to use it upon payment of a prescribed schedule of tolls. The railroads sued for the expense of re-routing their trains while the bridge was closed. The Gypsum Carrier court concluded that Rivtow is not properly limited to its fact situation and the particular relationship which existed there, noting that the Supreme Court of Canada has cited Rivtow for the broader principle that there may be recovery for pure economic loss without showing that a claimant has suffered physical injury to his person or property. Nevertheless, the Gypsum Carrier court concluded that the claim of the railroads was too remote to permit recovery. "The railways' economic loss was not . . . a direct and reasonably foreseeable result of the striking of the bridge by the vessel." 47 D.L.R. (3d) at 199.
 
 
 22
 It seems clear to us that the degree to which pure economic loss is recoverable under Canadian law is not free from doubt. Nevertheless, neither Gypsum Carrier, where the claim was similar to that of the plaintiffs in the present case, nor the decision of Justice Addy, where the facts are identical, was appealed. The district court's reliance on Gypsum Carrier and Justice Addy's opinion finds support in Canadian and English law. See Star Village Tavern v. Nield, (1976) 6 W.W.R. 80, 71 D.L.R. (3d) 439; Trappa Holdings Ltd. v. Surrey & Imperial Paving Ltd., (1978) 6 W.W.R. 545; Hunt v. T. W. Johnstone Co., (1976) 69 D.L.R. (3d) 639, 12 O.R. (2d) 623; SCM (United Kingdom) Ltd. v. W. J. Whittal & Son Ltd., (1970) 3 All E.R. 245. Judge Krupansky did not err in following the decision of Justice Addy as correctly stating the law of Canada.
 
 B.
 
 23
 The claimants-appellants contend that even if Canadian law does not permit recovery for detention of vessels which suffer no physical injury, the law of the United States does permit such recovery and it should be applied. They recognize the general rule that substantive rights in a tort action are governed by the law of the place where the wrong occurred. However, they contend that a claim for loss for detention is an exception because of the existence of an "overriding domestic policy translated into law . . . ." Norwalk Victory, supra, 336 U.S. at 396, 69 S.Ct. at 627.
 
 
 24
 In support of this assertion the claimants rely on two statutes and a number of cases. The statutes, 33 U.S.C. §§ 403 and 409,[5] clearly state a policy against obstruction of navigable waters. However, they do not deal with remedy, and the penalty provisions which follow[6] impose criminal sanctions in the form of fines and imprisonment plus revocation and suspension of the licenses of masters and pilots convicted thereunder. These statutes provide no proof of the existence of an overriding American policy permitting a vessel, otherwise uninjured, to recover from one whose negligence has caused delay in passage.
 
 
 25
 Many of the cases cited by the claimants are no more persuasive than the statutes. Cases which permit a party who suffers special damages, different from the inconvenience suffered by the general public, to recover against one responsible for a nuisance do not reach the question before us. In some of the cases cited, the plaintiffs either sought injunctions rather than damages or suffered direct physical injury to property from the wrongful acts of the defendants. E. g., Sinclair Refining Co. v. Smith, 13 F.2d 68 (5th Cir. 1926) (recovery for direct interference with riparian rights). In The Jamaica, 51 F.2d 858 (W.D.N.Y.1931), the issue in the present case was not discussed and apparently was not raised. Two relatively recent district court decisions do directly support the claimants. Both In Re China Union Lines, Ltd., 285 F.Supp. 426 (S.D.Tex.1967), and In Re Lyra Shipping Co., 360 F.Supp. 1188 (E.D.La.1973), allowed damages for detention of ships otherwise unaffected by collisions which obstructed channels. In view of other rulings to the contrary, we are unable to find that these decisions establish the existence of an overriding domestic policy.
 
 
 26
 In Petition of Kinsman Transit Co. (Kinsman II), 388 F.2d 821 (2d Cir. 1968), the court dealt with claims of shipowners who were unable to complete intended movements in the Buffalo River because of an obstruction which closed that waterway for two months. The claims were described by the court as follows:
 
 
 27
 Neither the Gillies nor the Farr (ships of claimants) suffered any direct or immediate damage for which recovery is sought. The instant claims occurred only because the downed bridge made it impossible to move traffic along the river. (footnote deleted).
 
 
 28
 Id. at 825.
 
 
 29
 In an earlier decision, Petition for Kinsman Transit Co. (Kinsman I), 338 F.2d 708 (2d Cir. 1964), the court determined liability and permitted recovery by those who suffered "direct" consequences of the negligent conduct and whose "damage, although other and greater than expectable, is of the same general sort that was risked." Id. at 724. The parties permitted to recover were owners of ships and the other property physically damaged in the series of events which occurred when one defendant's ship, which was improperly secured, broke loose into the river. Nevertheless, in Kinsman II the court denied recovery because the injuries suffered by the detained claimants were too "remote" or "indirect" a consequence of the defendants' negligence. 388 F.2d at 821.
 
 
 30
 The requirement of Kinsman II that recovery for pure economic loss be limited to that which is direct and not too remote a consequence of the defendants' negligence is not unlike the test in Rivtow Marine Ltd. v. Washington Iron Works, supra, that the damages be "the direct and demonstrably foreseeable result of the breach of that duty." (1974) S.C.R. at ---, 6 W.W.R. at 711. We conclude that there is no absolute rule either in Canada or the United States which forbids recovery for economic loss where the claimant has suffered no physical injury. Nor does a simple requirement of foreseeability provide the answer. Each nation's courts have been confronted with the task of determining the limit to which liability of a tortfeasor for consequential damages may be extended. The Kinsman court referred in both opinions to Judge Andrews' statement, dissenting in Palsgraf v. Long Island R.R., 248 N.Y. 339, 354-55, 162 N.E. 99, 104 (1928): "It is all a question of expediency, * * * of fair judgment, always keeping in mind the fact that we endeavor to make a rule in each case that will be practical and in keeping with the general understanding of mankind." See 338 F.2d at 725, 388 F.2d at 825. In Gypsum Carrier, Inc. v. The Queen, supra, 78 D.L.R. (3d) at 182, the Canadian court quoted Lord Denning, M.R., in Spartan Steel & Alloys, Ltd. v. Martin & Co. (Contractors) Ltd., (1973) 1 Q.B. 27, 36-37, in part as follows:
 
 
 31
 At bottom I think the question of recovering economic loss is one of policy. Whenever the courts draw a line to mark out the bounds of duty, they do it as a matter of policy so as to limit the responsibility of the defendant. Whenever the courts set bounds to the damages recoverable saying that they are or are not, too remote they do it as matter of policy so as to limit the liability of the defendant.
 
 
 32
 The claimants-appellants have failed to establish the existence of an overriding policy of the United States which is different from that of Canada on the question of permitting recovery for economic loss in the absence of physical injury.[7] Both countries recognize the right to recover for pure economic loss where particular relationships, e. g., accountant and client, securities advisor and investor, or manufacturer aware of defect who knows of intended use by consumer, establish a clear duty whose breach leads to injury. However, in cases where there is no pre-existing or special relationship and the duty owed to the claimants is the same as that owed to the public in general, the courts have deemed it reasonable to permit recovery only by those whose damages are "direct." Though arguments can be made for the opposite conclusion, courts in both countries have determined that the damages suffered by detained vessels which are not otherwise injured are too remote or indirect to warrant recovery. Since neither Canada nor the United States has adhered to an absolute rule either permitting or denying damages under these circumstances, there was really no choice-of-laws decision to be made. We cannot say that the district court erred.
 
 
 33
 Affirmed on appeal and cross-appeal. No costs allowed.
 
 
 
 [1]
 Virtually all maritime nations have provisions whereby shipowners are able to limit their liability for losses occasioned by the operation of their vessels. A concise history of limitation of liability under American law is contained in Chief Justice Taft's opinion in Hartford Accident & Indemnity Co. v. Southern Pacific Co., 273 U.S. 207, 214-16, 47 S.Ct. 357, 358-359, 71 L.Ed. 612 (1927)
 
 
 [2]
 § 185. Petition for limitation of liability; deposit of value of interest in court; transfer of interest to trustee
 The vessel owner, within six months after a claimant shall have given to or filed with such owner written notice of claim, may petition a district court of the United States of competent jurisdiction for limitation of liability within the provisions of chapter 6 of title 48 of the Revised Statutes and the owner (a) shall deposit with the court, for the benefit of claimants, a sum equal to the amount or value of the interest of such owner in the vessel and freight, or approved security therefor, and in addition such sums, or approved security therefor, as the court may from time to time fix as necessary to carry out the provisions of section 183 of this title, or (b) at his option shall transfer, for the benefit of claimants, to a trustee to be appointed by the court his interest in the vessel and freight, together with such sums, or approved security therefor, as the court may from time to time fix as necessary to carry out the provisions of section 183 of this title. Upon compliance with the requirements of this section all claims and proceedings against the owner with respect to the matter in question shall cease.
 
 
 [3]
 Whereas the Canadian law limits liability to a stated amount per ton, 46 U.S.C. § 183 provides that liability of the owner of the vessel "shall not . . . exceed the amount or value of the interest of such owner in such vessel, and her freight then pending." The Steelton had no cargo, and Bethlehem filed an ad interim stipulation for value of the ship in the amount of $850,000
 
 
 [4]
 We consider the issues in the same order they were decided by the district court. This order of proceeding is required by the Supreme Court's opinion in Black Diamond Steamship Corp. v. Robert Stewart & Sons, Ltd. (Norwalk Victory), 336 U.S. 386, 397-98, 69 S.Ct. 622, 628-629, 93 L.Ed. 754 (1949)
 
 
 [5]
 33 U.S.C. § 403
 The creation of any obstruction not affirmatively authorized by Congress, to the navigable capacity of any of the waters of the United States is prohibited; * * *
 33 U.S.C. § 409
 It shall not be lawful to tie up or anchor vessels or other craft in navigable channels in such a manner as to prevent or obstruct the passage of other vessels or craft; or to voluntarily or carelessly sink, or permit or cause to be sunk, vessels or other craft in navigable channels; or to float loose timber and logs, or to float what is known as "sack rafts of timber and logs" in streams or channels actually navigated by steamboats in such manner as to obstruct, impede, or endanger navigation. * * *
 
 
 [6]
 33 U.S.C. §§ 411, 412
 
 
 [7]
 For a comprehensive treatment of the subject in general, see F. James, Limitations on Liability for Economic Loss Caused by Negligence: A Pragmatic Appraisal, 25 Vand.L.Rev. 43 (1972)