BLACK DIAMOND STEAMSHIP CORP. *v.* ROBERT STEWART & SONS, LTD. ET AL.

NO. 121.

Argued January 3–4, 1949.—Decided March 14, 1949.

*John W. Crandall* argued the cause and filed a brief for petitioner in No. 121.

*Philip Elman* argued the cause for the United States, petitioner in No. 130. With him on the brief were

Solicitor General Perlman, Assistant Attorney General Morison, Samuel D. Slade and Morton Hollander.

William G. Symmers argued the cause for respondents. With him on the brief were Wilbur E. Dow, Jr. and Frederick Fish.

MR. JUSTICE FRANKFURTER delivered the opinion of the Court.

We brought these cases here because they call for determination of important issues in the administration of admiralty law. 335 U. S. 809. They bring for review a decree of the Court of Appeals for the Second Circuit affirming the dismissal of a petition for limited liability brought in the United States District Court for the Eastern District of New York by the United States as owner and the Black Diamond Steamship Corporation as bareboat charterer of the S. S. Norwalk Victory. 167 F. 2d 308.

The facts controlling our decision are briefly these. On April 28, 1947, the Norwalk Victory, while proceeding down the Schelde River in the territorial waters of Belgium, collided with the British steamer Merganser. The Merganser sank with all her cargo; her chief steward was killed; in backing away from the Merganser the Norwalk Victory struck and damaged the bank of the Schelde. Soon after the collision the owners of the Merganser brought suit against Black Diamond in the High Court of Justice of England claiming damages in the amount of $1,000,000. That is the only proceeding which has been brought abroad. On October 14, 1947, the owners of the cargo lost in the sinking of the Merganser brought suit in the Eastern District of New York; aggregate claims thus far filed total nearly $1,000,000.

In their petition for limitation of liability, brought under R. S. § 4285, as amended, 49 Stat. 1480, 46 U. S. C.

§ 185,[1] the United States and Black Diamond allege the possibility that in addition to the suit in the High Court of Justice and the suits by the cargo owners in New York, there may be suits in the courts of the United States by other cargo owners, by the personal representative of the *Merganser's* chief steward, and by the Belgian Government for damages to the bank of the Schelde and for the cost of removing the wreck of the *Merganser* from the river. These claims, they say, would exceed the value of the *Norwalk Victory,* which is about $1,000,000. But the petitioners, despite the provisions of R. S. § 4283, as amended, 49 Stat. 1479, 46 U. S. C. § 183,[2] do not rec-

---

[1] "Sec. 4285. The vessel owner, within six months after a claimant shall have given to or filed with such owner written notice of claim, may petition a district court of the United States of competent jurisdiction for limitation of liability within the provisions of this chapter, as amended, and the owner (a) shall deposit with the court, for the benefit of claimants, a sum equal to the amount or value of the interest of such owner in the vessel and freight, or approved security therefor, and in addition such sums, or approved security therefor, as the court may from time to time fix as necessary to carry out the provisions of section 4283, as amended, or (b) at his option shall transfer, for the benefit of claimants, to a trustee to be appointed by the court his interest in the vessel and freight, together with such sums, or approved security therefor, as the court may from time to time fix as necessary to carry out the provisions of section 4283, as amended. Upon compliance with the requirements of this section all claims and proceedings against the owner with respect to the matter in question shall cease."

[2] "Sec. 4283. (a) The liability of the owner of any vessel, whether American or foreign, for any embezzlement, loss, or destruction by any person of any property, goods, or merchandise shipped or put on board of such vessel, or for any loss, damage, or injury by collision, or for any act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred, without the privity or knowledge of such owner or owners, shall not, except in the cases provided for in subsection (b) of this section, exceed the amount or value of the interest of such owner in such vessel, and her freight then pending."

ognize the value of their ship as the limit of their liability. They insist, rather, that their liability is limited by the International Convention for the Unification of Certain Rules relating to the Limitation of the Liability of Owners of Seagoing Vessels, signed at Brussels on August 25, 1924.[3] The Convention was ratified by Belgium on

---

[3] The pertinent parts of the Convention, published in U. S. Dept. of State Treaty Information Bull. No. 20, p. 13 (1931), are:

"ARTICLE 1

"The liability of the owner of a seagoing vessel is limited to an amount equal to the value of the vessel, the freight, and the accessories of the vessel, in respect of—

"1. Compensation due to third parties by reason of damage caused, whether on land or on water, by the acts or faults of the master, crew, pilot, or any other person in the service of the vessel;

"2. Compensation due by reason of damage caused either to cargo delivered to the master to be transported, or to any goods and property on board;

.          .          .          .

"5. Any obligation to remove the wreck of a sunken vessel, and any obligations connected therewith;

.          .          .          .

"Provided that, as regards the cases mentioned in Nos. 1, 2, 3, 4, and 5 the liability referred to in the preceding provisions shall not exceed an aggregate sum equal to 8 pounds sterling per ton of the vessel's tonnage.

.          .          .          .

"ARTICLE 4

"The freight referred to in article 1, including passage money, is deemed, as respects vessels of every description, to be a lump sum fixed at all events at 10 per cent of the value of the vessel at the commencement of the voyage. . . .

.          .          .          .

"ARTICLE 7

"Where death or bodily injury is caused by the acts or faults of the captain, crew, pilot, or any other person in the service of the vessel, the owner of the vessel is liable to the victims or their representatives in an amount exceeding the limit of liability provided for

June 2, 1930, and took effect on June 2, 1931; it is alleged, therefore, to have been part of the territorial law of Belgium at the time of this collision in Belgian waters. On the basis of this Convention, the petitioners assert their maximum liability to be $325,028.79.

Accordingly, Black Diamond accompanied its petition for limitation of liability with a bond in the amount of $325,028.79. The United States, standing upon 28 U. S. C. § 2408 [4] and § 3 of the Suits in Admiralty Act, 41 Stat. 526, as amended, 46 U. S. C. § 743,[5] filed no bond. The District Court, holding that the privilege of limiting liability relates "not to the substantive rights giving rise to the liability, but to the remedy, and that is governed by the law of the forum," dismissed the petition on the ground that Black Diamond had not complied with R. S.

in the preceding articles up to 8 pounds sterling per ton of the vessel's tonnage. . . .

.      .      .      .

"ARTICLE 10

"Where the person who operates the vessel without owning it or the principal charterer is liable under one of the heads enumerated in article 1, the provisions of this convention are applicable to him.

"ARTICLE 11

"For the purposes of the provisions of the present convention, 'tonnage' is calculated as follows:

"In the case of steamers and other mechanically propelled vessels, net tonnage, with the addition of the amount deducted from the gross tonnage on account of engine-room space for the purpose of ascertaining the net tonnage. . . ."

[4] "§ 2408. Security not required of United States

"Security for damages or costs shall not be required of the United States, any department or agency thereof or any party acting under the direction of any such department or agency on the issuance of process or the institution or prosecution of any proceeding. . . ."

[5] "§ 743. Procedure in cases of libel in personam.

". . . Neither the United States nor such corporation shall be required to give any bond or admiralty stipulation on any proceeding brought hereunder."

§ 4285 by filing a bond in the amount of the value of the ship—$1,000,000. The standing of the United States (which was not separately represented at that stage of the proceeding) was not considered.

Upon appeal, the petitioners were found to be in "a dilemma from which they cannot escape." 167 F. 2d at 309. Reading the petition as alleging that the Belgian limitation attached to the claimants' substantive right to recover, and treating that allegation as proved for purposes of determining the sufficiency of the petition, the Court accepted *arguendo* the sum of $325,000 as "the limit of all their [petitioners'] liabilities." *Ibid.* But though the Court of Appeals looked to the *lex loci delicti* for the substantive limit of liability, its next step was taken on the assumption that the conditions under which a petition praying for the injunction of other proceedings and a *forum concursus* may be filed are matters of procedure governed by the *lex fori.* It is a condition imposed by the *lex fori,* the court's reasoning continued, that a petition for limitation of liability is not available to a shipowner unless the aggregate of known and probable claims against him is greater than the value of his ship. As establishing this proposition, the court cited *The Aquitania,* 20 F. 2d 457 (C. A. 2d Cir.); *Curtis Bay Towing Co.* v. *Tug Kevin Moran,* 159 F. 2d 273 (C. A. 2d Cir.); and *The George W. Fields,* 237 F. 403 (S. D. N. Y.). And it held these cases applicable on the ground that the maximum liability imposed by Belgian law was less than the value of the *Norwalk Victory.*

But the lower court found it unnecessary to pass finally on the question whether the Belgian limitation was in fact controlling because, if it were not, petitioners would be impaled on the other horn of the dilemma: if the substantive law of the forum rather than that of Belgium applied, the limit of liability, by R. S. § 4283, would be the value of the vessel.

Since the procedural law of the forum, moreover, requires the posting of a bond in the amount of potential liability, and since the bond proposed by petitioners was for less than a third of that amount, upon this hypothesis also they were disentitled to proceed. The Court of Appeals accordingly affirmed the dismissal of the petition.

If the Court of Appeals' reliance upon *The Aquitania, Curtis Bay Towing Co.* v. *Tug Kevin Moran,* and *The George W. Fields, supra,* was, as we are convinced, under the circumstances misplaced, we escape its dilemma without wanting in respect for the wisdom of that most experienced of admiralty courts. Those cases, it is true, hold that where the aggregate claims against a shipowner can by no possibility exceed the value of his ship, a proceeding under R. S. § 4285 will not lie. But the value of the ship was relevant in those cases only because under the law of the United States, which was assumed to be applicable, that was the limit of the owner's liability. Since the total amount of all potential claims in each case was only a fraction of that limit, the fund available for their satisfaction was more than ample. There was no reason, therefore, for permitting the petitioners to invoke a *forum concursus.* But where, as here, the total amount of potential claims exceeds the fund available for their satisfaction, whether that fund be measured by the law of Belgium or of the United States, there exists just such a situation as R. S. § 4285 was designed to meet.

> "Unless some proceeding of this kind were adopted which should bring all the parties interested into one litigation, and all the claimants into concourse for a *pro rata* distribution of the common fund, it is manifest that in most cases the benefits of the act could never be realized. Cases might occur, it is true, in which the ship owners could avail themselves of those benefits, by way of defence alone, as where both ship and freight are totally lost, so that the

owners are relieved from all liability whatever. But even in that case, in the absence of a remedy by which they could obtain a decree of exemption as to all claimants, they would be liable to a diversity of suits, brought perhaps in different States, after long periods of time, when the witnesses have been dispersed, and issuing in contrary results before different tribunals; whilst in the ordinary cases, where a limited liability to some extent exists, but to an amount less than the aggregate claims for damages, so as to require a concourse of claimants and a *pro rata* distribution, the prosecution of separate suits, if allowed to proceed, would result in a subversion of the whole object and scheme of the statute." *Providence & N. Y. S. S. Co.* v. *Hill Mfg. Co.,* 109 U. S. 578, 594–95.

Indeed, if the total amount recoverable is fixed by Belgian law, the need for the issuance of a monition under Admiralty Rule 51, the injunction of other suits, and a *forum concursus* is obviously greater than it is under the higher substantive limitation of our own law. Thus one of the horns of petitioners' dilemma disappears; we must, accordingly, reverse the judgment below and remand the cases for further proceedings.

Since the cases are going back, it is necessary to confront the other horn of the dilemma. In that branch of its reasoning, the Court of Appeals assumed that the posting of too small a bond would require the dismissal of the petition. The court's attention apparently was not directed to the status of the Government, which, by the plain import of 28 U. S. C. § 2408 [6] and 41 Stat. 525, as amended, 46 U. S. C. § 743,[7] relieves it of the duty to post a bond in order to be entitled to proceed under

[6] See footnote 4 *ante.*

[7] See footnote 5 *ante.*

R. S. § 4285. And perhaps it is well to add, in passing, that, in view of the six-month limitation [8] on proceeding under that statute, remand to the District Court in order to give Black Diamond an opportunity to file a larger bond would have been a better course, since the defect was not jurisdictional, than affirmance of dismissal of the petition. See *Langnes* v. *Green,* 282 U. S. 531, 541–42; *Curtis Bay Towing Co.* v. *Tug Kevin Moran,* 159 F. 2d 273, 276; cf. *Bigler* v. *Waller,* 12 Wall. 142, 149; *Davis* v. *Wakelee,* 156 U. S. 680. We add this observation because, under the circumstances, affirmance could only have had the effect of depriving the petitioners altogether of the privilege of a limitation proceeding, no matter what the amount of the bond they were willing to post. It threw them back upon the dubious advantage of limitation of liability as a partial defense to successive suits in admiralty in which the recoveries, though separately less than the applicable limit, might in the aggregate far exceed it. And such would be the effect were we also to affirm the judgment.

Having decided that the case must be remanded because the petition was improperly dismissed, we turn to the question whether there are any circumstances under which the Belgian limitation would be enforceable by our courts. On this point we agree with the Court of Appeals—and disagree with the District Court—that if, indeed, the Belgian limitation attaches to the right, then nothing in *The Titanic,* 233 U. S. 718, stands in the way of observing that limitation. The Court in that case was dealing with "a liability assumed already to exist on other grounds." *Id.* at 733. But if it is the law of Belgium that the wrong creates no greater liability than that recognized by the Convention of 1924, we cannot, without more, regard our own statutes as ex-

---

[8] See footnote 1 *ante.*

panding the right to recover. Any other conclusion would disregard the settled principle that, in the absence of some overriding domestic policy translated into law, the right to recover for a tort depends upon and is measured by the law of the place where the tort occurred. *Smith* v. *Condry,* 1 How. 28, 33; *Slater* v. *Mexican National R. Co.,* 194 U. S. 120; *Cuba R. Co.* v. *Crosby,* 222 U. S. 473; *Western Union Telegraph Co.* v. *Brown,* 234 U. S. 542.

If, on the other hand, the Convention merely provides procedural machinery by which claims otherwise created are brought into concourse and scaled down to their proportionate share of a limited fund, we would respect the equally well settled principle that the forum is not governed by foreign rules of procedure. See *Pritchard* v. *Norton,* 106 U. S. 124; *Davis* v. *Mills,* 194 U. S. 451. We leave open the choice between these opposing hypotheses. Nor do we mean to imply that these apparently clear-cut alternatives are exhaustive. A limit which attaches not to an individual's right of recovery but to the aggregate claims arising from a given tort can be said to be "attached to the right" only in a special sense of that phrase, and a rule which operates to cut down the amount recoverable by a claimant cannot be fitted within any but a very broad definition of the term "procedure." Whether they are in fact considerations of domestic policy which deserve to be measured against application of the *lex loci delicti* and whether such considerations are as significant where the foreign limitation is lower than our own as where it is higher—these too are questions not now before us in view of the fact that the case is here merely on exceptions to the petition for limitation of liability.

Since Belgian law may be enforceable by our courts, that law, having been pleaded, must be established. It is true that this Court has on several occasions held

international rules which had passed into the "general maritime law" to be subject to judicial notice. *The Scotia,* 14 Wall. 170; *The Belgenland,* 114 U. S. 355, 370; *Richelieu & Ontario Nav. Co.* v. *Boston Marine Ins. Co.,* 136 U. S. 408, 422; *The New York,* 175 U. S. 187. But where less widely recognized rules of foreign maritime law have been involved, the Court has adhered to the general principle that foreign law is to be proved as a fact. *Liverpool Steam Co.* v. *Phenix Ins. Co.,* 129 U. S. 397; see *Talbot* v. *Seeman,* 1 Cranch 1, 38; *The Scotia,* 14 Wall. 170, 188. See also the decisions of the lower federal courts cited in 3 Benedict on Admiralty 11, n. 36 (6th ed., Knauth, 1940). Although we would no doubt be free to notice the terms of the Limitation Convention itself even though they were not set forth among the allegations of the petition, their legal significance does not appear on the surface. "Many doubts are left unresolved by the documents before us." *Slater* v. *Mexican National R. Co., supra,* 194 U. S. at 130. Respondents, indeed, in their effort to show that the Convention lays down purely "procedural" requirements, rely upon "personal consultations with three active maritime lawyers of Antwerp" which are no part of the record before us. "Substance" and "procedure," moreover, are not legal concepts of invariant content, see *Guaranty Trust Co.* v. *York,* 326 U. S. 99, 109, and on the basis of what is before us we are precluded from choosing one of these categories rather than the other.

It is important to add, moreover, that the question of what law governs the substantive limit of liability should be determined upon remand in advance of the proof of individual claims. A proceeding to limit liability is *ipso facto* a proceeding to limit recovery, and the amount of the applicable limit, like the value of the vessel and freight, is a question affecting the magnitude of the *res* from which recovery is sought. It is a question, therefore,

which lies at the threshold of all claims, is equally relevant to all, and should accordingly be disposed of before any.

One last point remains to be considered—the amount of the bond to be required of Black Diamond upon remand of No. 121. A literal reading of the procedural requirements of R. S. § 4285 would compel the posting of a bond in "a sum equal to the amount or value of the interest of such owner in the vessel and freight," in this instance about $1,000,000. But we think that this provision, as part of a total legislative scheme, should be read in the light of the substantive limitation imposed by R. S. § 4283, for it is obvious that the words "amount or value of the interest of such owner" in § 4285 were carried over from and are relevant solely to the identical language of § 4283 laying down the limit which recovery against the owner "shall not . . . exceed." The whole tenor of R. S. § 4285—the option of depositing cash or "approved security," the discretion granted the court to require additional deposits if "necessary to carry out the provisions of section 4283," and the alternative of transferring the vessel and freight to a trustee—is one of concern with protecting the assets from which the claimants' satisfaction must ultimately come.

If, therefore, Belgian law rather than R. S. § 4283 should be found to govern the substantive limit of liability, no purpose would be served, so far as proceedings in the District Court are concerned, by demanding security in excess of that limit. But the choice of law presents a knotty problem, and we cannot overlook the contingencies of appellate review. If the District Court should find Belgian law controlling, it might, under our interpretation of § 4285, exact a bond of only $325,000. If, however, a contrary view should ultimately prevail, the requisite amount of the bond would have been $1,000,000. The District Court, therefore, should provide for that contingency by requiring Black Diamond to

post a bond for the value of the ship and freight, not because § 4285 demands it, but as an exercise of its power to preserve the *status quo* pending appeal. See *Scripps-Howard Radio, Inc.* v. *F. C. C.*, 316 U. S. 4, 9–10.

So, for proceedings not inconsistent with this opinion, the case is

*Reversed and remanded.*

MR. JUSTICE JACKSON, dissenting.

I suspect this decision will cause confusion in practical application of the Act of Congress governing limitation proceedings in admiralty.

The Act is designed to encourage American capital to risk itself in shipping ventures where "ships are but boards, sailors but men: . . . and then there is the peril of waters, winds, and rocks." In order that disaster at sea might not jeopardize the shipowner's other assets, Congress limited his liability to the "value of the interest of such owner in such vessel, and her freight then pending." R. S. § 4283, as amended, 49 Stat. 1479, 46 U. S. C. § 183.[1] This limitation serves much the same purpose for maritime ventures that the corporate fiction serves for the landsman's enterprises.

The statute also provides a skeleton proceeding, filled in by our rules, for affirmatively effecting this limitation of liability when catastrophe threatens claims that exceed the value of ship and freight. To a landlocked mind it has some analogy to voluntary bankruptcy. It is, in

---

[1] "The liability of the owner of any vessel, whether American or foreign, for any embezzlement, loss, or destruction by any person of any property, goods, or merchandise shipped or put on board of such vessel, or for any loss, damage, or injury by collision, or for any act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred, without the privity or knowledge of such owner or owners, shall not . . . exceed the amount or value of the interest of such owner in such vessel, and her freight then pending."

effect, a turn-over of the assets at risk to satisfy creditors. The owner may, after petitioning the District Court for limitation of liability, either transfer to a trustee his interest in the vessel and freight, together with enough to make up the limitation, and be quit of further responsibility, or he may keep his ship and sail on, provided he shall deposit with the court "a sum equal to the amount or value of the interest of such owner in the vessel and freight, or approved security therefor." R. S. § 4285, as amended, 49 Stat. 1480, 46 U. S. C. § 185.

Our statute is clear: § 4283 fixes the *maximum* liability at ship plus freight and § 4285 sets the *minimum* security at the same figure. To provide any other limit of liability or security is to rewrite both sections. As written, the two sections provide and are designed to provide a provisional remedy to let the ship go her way while the creditors are secured as well as if she were held in custody to pay their claims.

Our own rules in admiralty, as amended June 21, 1948, prescribe the practice for applying this limitation when the shipowner takes the initiative under R. S. § 4285. The proceeding is conducted in two stages. In the first or preliminary stage the owner petitions for relief from personal liability, is required either to surrender his interest in the ship and her freight or to stipulate, with adequate bond, to pay into court its value. The statute says, "Upon compliance with the requirements of this section all claims and proceedings against the owner with respect to the matter in question shall cease." At this point an important change in the nature of the proceeding occurs.

The proceeding continues as a proceeding *in rem* against either the ship or the fund as the *res*. Our rules provide that when petitioner complies with the court's order as to surrender or bond, the court shall issue a monition requiring all persons asserting claims to file the

same and may also issue injunction against the further prosecution of suits against either the owner or the vessel. Rule 51. The court then adjudicates the claims and apportions the available fund among them. Rule 52. The owner is at liberty to contest his liability or the liability of the vessel "provided he shall have complied" with the requirements of surrender or deposit as above set forth. Rule 53.

We think such compliance is a condition precedent to obtaining a *forum concursus* to adjudicate liability. As the petitioner in this case did not post the security nor surrender the ship as required, the court below properly dismissed the petition and refused to enter the second or adjudicating stage of the proceeding.

This Court apparently holds that compliance is not a condition precedent and that instead of the vessel's value some other measure of liability might be adequate. While it requires the prescribed bond in this particular case, it does so, as we read its opinion, only as a matter of discretion and because of uncertainty as to the final decision on the foreign law issue on appeal. It seems to authorize a foreign law limitation on liability to be applied before a *forum concursus* takes place, while we think any issue as foreign law liability is to be applied only in the latter stage of the proceedings when the general issues as to liability are to be determined.

Congress could not have been unaware that maritime usages the world over have imposed some limitation upon ship-owners' liability and that several bases for its ascertainment have existed. Some systems have admitted no personal liability of the owner, confining liability to the ship itself; others have limited the owner's personal responsibility on his abandonment of the ship and freight. Still others have limited personal responsibility to payment of a sum computed on the ship's tonnage. Congress, however, has deliberately imposed and adhered to

402

our own measure of liability based on the actual value of the interest in the ship and her freight. We think there is no authority for releasing the owner from liability, or releasing the ship, which are the steps now under consideration, until the owner has complied with provisions which fully protect this American measure of liability.

In this case, the reason the owners did not comply with the American limitation provision is that they aver that on the Schelde, where the collision occurred, Belgian law granted a much more drastic limitation, under which their liability is only about one-third of that imposed by our law. The court below held that release of the owner and ship, and invocation of a *forum concursus*, could not be granted on this basis. But it held that if they had complied with provisions of American law necessary to reach the question of the amount of aggregate liability, they were at liberty to interpose the Belgian law as a defense. The Court now holds that this question of fact—what is the foreign law?—should be determined as a part of the preliminary step in the case and that the bond may be limited thereby. We think this is not the scheme of the statute and the rules and that, except for issues subsidiary to the court's fixing of the security required under Rule 51, all matters of fact, going to the substance of liability, are to be heard only at the later stages of the proceedings.

The limitation figure is established preliminarily, not because it represents the *res,* but because the statute and rules prescribe that formula and procedure for fixing both the maximum liability and minimum security required of the owner. And it has no bearing on the amount of claims that may be proved—until the latter are determined and a proportion established there is no need to know, for that purpose, what limit of liability applies. Indeed, unless it is intended to also change the

rule where the statutory limitation under R. S. § 4283 is set up as a defense, it may be asserted after trial on the merits and after judgment. *The Benefactor,* 103 U. S. 239. And by the terms of Rule 55, the provisions of Rules 51–54 regulating limitation of liability proceedings are made applicable even to the Courts of Appeals.

Admiralty practice is a unique system of substantive law and procedure with which members of this Court are singularly deficient in experience. The court below is perhaps the most experienced in this country. The issue on which we reverse it is not one of ultimate rights of parties but one of practice, the consequences of which cannot be foreseen. I should leave the problem, at least at this stage, where the Court of Appeals left it, with a minor exception.

Of course, it should be noted that the Government is exempt from giving any security, but that is an oversight that it hardly needed to come here to correct. It should have the limitation which Congess has prescribed.

Except for that detail, I would affirm.

It may be that petitioner should now be allowed to amend and file the required bond equal to the ship's value and proceed. It has not so far asked to do so, insisting instead upon what it thought to be its legal right to proceed without compliance. This question, too, may be left to the courts below.

Mr. Justice Reed and Mr. Justice Douglas join in this opinion.

Mr. Justice Rutledge, dissenting.

I agree with Mr. Justice Jackson that, when Congress gave shipowners the privilege of limiting their liability and conditioned that privilege, in the alternative, upon turning over the vessel and freight for the benefit of claimants or depositing with the court cash or approved

security of equivalent value, it meant exactly what it wrote into the statute concerning the amount of the security to be given.

Nothing in the statute's wording, purpose, or legislative history is cited or exists to justify rewriting "a sum equal to the amount or value of the interest of such owner in the vessel and freight," [1] so as to make that wording read "a sum equal to one-third the value of the interest of such owner when that amount possibly but by no means certainly will be the limit of his substantive liability after the claims against him are finally determined."

The most appealing argument put forward to support this statutory distortion is petitioners' wholly specious plea of resulting "injustice" if the judicial revision is not made. The plea is founded altogether upon petitioners' assumption that their view of the extent of their aggregate possible liability will prevail, when the time comes for deciding that question.

Petitioners' view is that the *lex loci delicti* governs both the existence and the extent of their liability in this case. That law is the law of Belgium, because the collision here involved took place in Belgian waters. Moreover, since Belgium ratified the Brussels Convention of August 25, 1924,[2] that Convention is claimed to be controlling of the resulting substantive liability. This, because the aggregate limit the Convention prescribes comes to only some $325,000 in this case and that limit, so it is argued, attaches to the right of recovery as part of the right, not merely as a matter of remedy. See *Slater* v. *Mexican National R. Co.,* 194 U. S. 120. Cf. *Smith* v.

---

[1] Rev. Stat. § 4285, as amended, 49 Stat. 1480, 46 U. S. C. § 185. The full text of the section is quoted in note 1 of the majority opinion.

[2] International Convention for the Unification of Certain Rules Relating to the Limitation of the Liability of Owners of Seagoing Vessels, signed at Brussels on August 25, 1924. See note 3 of the majority opinion.

*Condry,* 1 How. 28, 33; *Cuba R. Co.* v. *Crosby,* 222 U. S. 473; *American Banana Co.* v. *United Fruit Co.,* 213 U. S. 347.

Hence, it is urged, petitioner Black Diamond satisfied the requirements of Rev. Stat. § 4285, as amended, for limitation of liability, when it deposited an approved bond for $325,000, rather than one in the amount of $1,000,000, the value of the owner's interest in the vessel and freight, as § 4285 in terms requires. The conclusion is grounded on the "injustice" which petitioners say would result if one substantively liable for only $325,000 were required to post bond in three times that amount in order to have the advantage of limitation. This, it is said, would mean forcing such an owner to pay bond premiums three times larger than necessary to discharge all his liabilities, an "injustice" it is argued Congress cannot have contemplated notwithstanding its clear and unambiguous language.

Even if petitioners' assumption concerning their ultimate liability should turn out to be true, the statutory command is clear and unequivocal: Turn over the ship and the freight or their value as the price of limitation. In this command Congress was concerned not at all with the extent of aggregate claims or liabilities. It was concerned only with affording the owner a chance to limit his liabilities, but at the same time allowing this privilege only on precise and fixed conditions for giving security to his creditors in the amount specified. This was unrelated to the amount of the liabilities in the aggregate, whether above or below the maximum fixed by the statute.[3]

That Congress intended the same maximum and the same security for claimants, regardless of the alternative mode chosen for giving the security, is shown by

---

[3] But cf. the cases cited in the text *infra* at note 5.

the very alternatives themselves. They are equivalents. There was no intent to permit less security to be given when the owner elects to give the statutory substitutes than when he turns over the ship. Correlatively there was no intention to give him the limitation for less cost or on more advantageous terms in the one case than in the other. The provision for substituting money or security for the ship had no purpose or function to correlate the bond required with the amount of the ultimate aggregate substantive liabilities, which seldom can be known in advance of their final determination. The alternative mode's purpose was only to permit the owner to release the ship and continue it in active business use, provided he substituted its equivalent in value, not some lesser sum, for it.

It is quite true that the statute was enacted for shipowners' benefit and for encouragement of the industry, by enabling owners to limit their liability. But in doing this and thereby cutting down the rights of claimants to recovery, Congress was not unmindful of the latter. For satisfying their unrestricted claims it substituted a fund instead of the owner's general and unlimited liability. That fund was the vessel's value or its equivalent. Nor was this a subordinate feature of the scheme of limitation. It was the very heart of that scheme, and, in my opinion, was intended to create a general and uniform policy for application in American courts. In cutting down claimants' rights of recovery to the fund prescribed, Congress was not giving the owner the additional right to cut further the security provided for their payment, by either assuming or pleading that his ultimate aggregate liabilities would be below that fund.

This brings us to the final consideration, which is that there is no injustice whatever here, there is only an imagined one, in requiring Black Diamond to deposit in court cash or security in the full amount of $1,000,000

required by the statute's terms. The aggregate of petitioners' liabilities has not been determined, nor can it be until the further and probably extended proceedings for that purpose have been concluded. Meanwhile, it must remain uncertain, as it has during all the litigation to this date, whether petitioners' or respondent's view on that matter ultimately will prevail. In other words, it is now as likely that petitioners' liabilities eventually will be found to be $1,000,000 as it is that they will be fixed according to petitioners' view of the Belgian law and ours. Indeed, the Court's opinion sets forth considerations casting grave doubt on whether petitioners' theory of the substantive limitation can prevail.

In this state of affairs petitioners actually are asking us to gamble with them, and against respondent and other claimants, on the ultimate computation of petitioners' aggregate liabilities. And in this petitioners are asking us to put upon the claimants the risk that petitioners will turn out to be right. That risk, under the statute's policy, should be the other way. Likewise, under that policy, the cost of that risk is put upon petitioner Black Diamond. In reducing claimants' rights of recovery to the value of the ship or its equivalent, Congress did not mean that the claimants should take the risk of not having that value available to satisfy their claims if the aggregate should eventually be held to be the amount of the specified fund. Nor did it mean that they should have that value for security if the ship were turned over for their benefit, but should bear either the loss or the risk if the shipowner elected to substitute cash or other security, with the court's approval, in a smaller amount in order to keep his vessel running.

In the event petitioners turn out to be wrong and, as seems likely in that event, valid claims should amount to $1,000,000 or more, under the view petitioners would have us take, the claimants would have certain security

to apply on what is due them for only $325,000. Petitioner Black Diamond then either will have limited its liability to that amount, to the claimants' loss and contrary to the statute's provision; or, if the District Court should then see fit to apply the authority given it to require further security to carry out the purposes of § 4283, as amended,[4] it will have cast the burden of Black Diamond's solvency on the claimants for the probably extended period of litigation necessary to complete the final determination of petitioners' substantive liabilities.

I do not think the statute meant the claimants to bear either such a loss or such a risk. Its policy is to exchange limitation for security. The security specified is not contingent or to be supplied in the future. It is a present exchange, immediately effective, to give the shipowner immunity to liability beyond the fund exacted and, at the same time, to relieve claimants of any risk that the fund will not be available if their valid claims eventually equal or exceed it. To allow security in less than the statutory amount to be given, on the chance that valid claims may turn out to be less than the fund, vitiates that clear statutory object and command. The only purpose of requiring the approved substituted security to be deposited in court is to assure that claimants will not bear the risk of loss of the fund pending the final determination of their claims.

Petitioners' claim of "injustice" is therefore without substance. Black Diamond seeks to shift to its creditors the risk which the language and policy of the statute place on it. The statute does not permit security contingent upon the outcome of the adjudication of claims

---

[4] Whether the ship is turned over for the creditor's benefit or other acceptable security is substituted, § 4285, as amended, authorizes the court to require "in addition such sums, or approved security therefor, as the court may from time to time fix as necessary to carry out the provisions of" § 4283, as amended. 46 U. S. C. § 185.

or to be given in the future. The security is to be given concurrently with the privilege of limitation and is to stand in the court's control and at the statutory amount until the claims are finally adjudicated. Black Diamond seeks to have the statutory limitation without paying the statutory price. If that were allowed, the injustice would fall upon the claimants, not upon Black Diamond.

No case has been cited which holds that the statutory limitation can be obtained by giving security in less than the statutory amount. Nor need we now express opinion upon the problem considered in cases like *The Aquitania,* 20 F. 2d 457, and *Curtis Bay Towing Co.* v. *Tug Kevin Moran,* 159 F. 2d 273.[5]

In my view petitioner Black Diamond has not complied with the statute. Strictly therefore it is not entitled to the statutory limitation. But because the question is novel, the time for instituting another limitation proceeding has passed, and filing of security now in accordance with the statute's command would better serve its objects than dismissing the cause, I would reverse the judgment and remand the cause to the District Court to permit the filing of the statutory security, if Black Diamond can and promptly will comply with that requirement. This is for the reason that the statute, § 4285, requires security to be given by turning over the ship or its value in order to secure the limitation of liability, not merely as a matter of judicial discretion to preserve the status quo pending appeal from determination of the issues concerning whether the Belgian substantive limitation applies. The statutory security, if given, should remain in force until all claims have been filed and finally adjudicated.

---

[5] Holding, as the Court of Appeals said in this case, that the limitation proceeding is not available where the aggregate of known and probable claims is less than the value of the ship.