ACCINANTO, Ltd., et al. v. COSMOPOLI-
TAN SHIPPING CO., Inc. et al.

Nos. 3028, 3035, 3037, 3053, 3058 and 3060.

United States District Court
Maryland, Admiralty Division.

Oct. 31, 1951.

Lord, Whip & Coughlan, George W. P. Whip, Baltimore, Md., Bigham, Englar, Jones & Houston, Henry N. Longley and James H. Simonson, New York City, for libellants.

Ober Grimes & Stinson, Wm. A. Grimes, Baltimore, Md., Haight, Deming, Gardner, Poor & Havens, New York City, Wharton Poor and Tallman Bissell, New York City, for respondents.

CHESNUT, District Judge.

These cases presented libels in personam against Mowinckels Rederi, sub-time charterer of the Ocean Liberty. The ship was partially loaded in Baltimore in June 1946 with ammonium nitrate fertilizer which, by spontaneous combustion, caused a fire to and subsequent explosion and entire destruction and sinking of the ship in the Harbor of Brest, France. The libels were filed by the shippers, owners or consignees of other cargo on the ship. On August 7, 1951 after trial of the case in this court, findings of fact and an extended opinion were filed, 99 F.Supp. 261, 1951 A.M.C. 1465. By the opinion the respondent carrier is held liable for fault in not exercising due diligence to make the ship seaworthy at the commencement of the voyage, under the provision of the Carriage of Goods by Sea Act, 46 U.S.C.A. §§ 1300–1315, and particularly sections 1303 and 1304.

In the respondents' answer reliance for defense was set up under the American Fire statute, 46 U.S.C.A. § 182, the Carriage of Goods by Sea Act, 46 U.S.C.A. § 1304, and the Limitation of Liability Act, 46 U.S.C.A. § 183. Under section 183 the maximum liability would be "the amount or value of the interest of such owner in such vessel, and her freight then pending." In the instant case the vessel was completely destroyed and therefore of no value. If section 183 had otherwise been applicable the maximum liability would have been

only the value of the ship's "freight then pending". The exact amount thereof does not appear in the evidence but must have been much less than the amount of the cargo claims in this case which have been estimated by counsel at about $1,000,000. However, this American statute on limitation of amount of liability was not pressed by the respondents probably because by the wording of the statute the defense is available only to the "owner" of the vessel. Mowinckels was not the owner of the vessel but only the sub-time charterer for the particular voyage.

The point now presented to the court arises upon the libellant's exceptions to the respondents' amendment of its answer. The amendment sets up as applicable substantive law a French statute which, it is alleged, would limit the amount of responsibility of the respondents in this case to $60,000, representing, under the terms of the statute, 10% of the value of the ship at the beginning of the voyage. The exceptions challenge the applicability of this foreign statute as a defense in this case. The amendment was made after the opinion on liability had been filed. It was not made to conform the pleadings to the proof because no evidence had been submitted by the respondent with respect to this French law; nor had it been relied upon at the trial. But during preliminary proceedings in the case, prior to trial, respondents had moved to amend the answers substantially as the amendments have now been made. The amendments were not then permitted by the court but leave was given to respondents to renew the motion for amendment at a later date. During or at the conclusion of the trial and before final submission of the case for decision, the respondents renewed their motion for the amendment. No ruling thereon was then made but after the opinion was filed a formal motion for leave to make the amendment was filed with the court and on October 1st last was granted. Though recognizing that the time for making the amendment was belated, I was of the opinion that it should be nevertheless granted in view of the former requests therefor. There is also the further explanation of the delay by counsel for the respondents who points out that the libels were filed in 1948, about one year before the decision of the Supreme Court in the case of the Norwalk Victory under the name of Black Diamond Steamship Corp. v. Robert Stewart & Sons Ltd., 336 U.S. 386, 69 S.Ct. 622, 93 L.Ed. 754; and it is further said that this latter case is the principal authority to support the amendment.

Upon consideration of the oral and written arguments of counsel for the parties, I have concluded that the exceptions to the amendment of the answer must be *sustained*. I will state briefly the principal reasons for this conclusion.

The nature of the French statute now set up by the respondents is a limitation of liability. Prior to the decision of the Supreme Court in the Norwalk Victory, supra, it appeared to be settled that the matter of statutes limiting the liability of vessel owners is governed by the law of the forum (*lex fori*), as matters of procedure. The Scotland, 105 U.S. 24, 26 L.Ed. 1001; The Titanic, 233 U.S. 718, 34 S.Ct. 754, 58 L.Ed. 1171; The State of Virginia, D. C., 60 F. 1018; Royal Mail Steam Packet Co. v. Companñia de Navegaco Lloyd Brasileiro, D.C., 31 F.2d 757, 1929 A.M.C. 195. The decision in the Norwalk Victory seemingly at least qualifies the generality of that feature of the general maritime law. In that case an American vessel collided with and sank a British vessel whose cargo was thereby destroyed or damaged. The cargo owners sued the owners of the American vessel in a federal district court. Respondent then petitioned for limitation of liability under the procedure authorized by the American statute, 46 U.S.C.A. § 185, and applicable Admiralty Rules, 28 U.S.C. A., but limited their tender of security to the amount of $325,000 (instead of about $1,000,000, the value of the American ship) under the alleged applicability of the Belgian statutes of limited liability (which is the same as the French statute relied on in this case). The owners' petition for limitation of liability was dismissed by the district judge and his decree affirmed by the Second Circuit because the amount of security tendered was not sufficient under

the United States statute. In the majority opinion of the Supreme Court it was held that opportunity should be given to the vessel owner to submit proof as to the nature of the Belgian statute with particular respect to whether it was a procedural rule or a substantive law, and that if the latter was shown to be the case the ship owner should have the benefit of the Belgian law. The case was reversed. As the court was unable, merely on the face of the Belgian statute, to determine whether it was in nature procedural or substantive, the case was remanded to the lower court for determination of that question, but upon the condition that the petitioner give security in the amount of $1,000,000 to be effective in the event it was found that the United States statute rather than the Belgian statute governed the case. Counsel in this case do not know what, if any, has been the subsequent history of the Norwalk Victory case.

Counsel for the libellant contends that the decision in the Norwalk Victory has no application here. I think this contention is correct. The liability of the American ship in that case arose from a maritime tort committed within the territorial jurisdiction of Belgium. It is, of course, familiar law that legal liability for a tort is to be determined by the law of the place of occurrence. In the instant case the liability of Mowinckels, the carrier, was predicated in the libels upon the contract of carriage evidenced by bills of lading issued in the United States, and in the opinion heretofore filed the liability has been found to be due to the fault of the carrier in the acceptance of very hazardous cargo without sufficient inquiry as to its nature, whereby the ship was made unseaworthy at the start of the voyage. The nature of the cause of liability in the instance case is, therefore, quite different from that involved in the case of the Norwalk Victory. The opinion in the instant case bases the liability upon the Carriage of Goods by Sea Act, which was also relied upon defensively in the respondents' answer. It is, therefore, my view that the decision in the Norwalk Victory does not govern this case. See also Petition of Canada Steamship Lines, D.C.Ohio, 94 F.Supp. 322.

Another reason for my conclusion is based on the provision of the French statute itself which makes it inapplicable here under the facts. The French statute relied upon by Mowinckels results from the adoption by the Government of France of an International Convention for the Unification of Certain Rules Relating to the Limitation of the Liability of the Owners of Sea-going Vessels. This Convention was adopted at Brussels on August 25, 1924, to be effective when ratified by other States, respectively. It has been ratified by 12 States including Belgium, France and Norway, but not by the United States. The whole of this Convention (as translated) can be found in Vol. VI of Benedict on Admirality, 6th Ed. A. W. Knauth, pp. 87 to 91 (see also a portion of the text contained in a note to the Norwalk case, 336 U.S. at page 390, 69 S.Ct. at page 624. The amendment of the answer quotes Articles 1, 4 and 10 of the Convention. The substance of these Articles is to limit the liability of the *ship owner* to an amount equal to the value of the vessel, the freight and the accessories of the vessel; and the freight to be considered "to be a lump sum fixed at all events at 10% of the value of the vessel at the commencement of the voyage"; and it is provided (Art. 10): "Where a person who operates the vessel without owning it, or the principal charterer is liable under one of the heads enumerated in Article 1, or Article 7, the provisions of this Convention are applicable to him." Counsel for the libellant points out that Article 2 of the statute (not quoted in the amended answer) reads as follows: "The limitation of liability laid down in the foregoing Article does not apply—(1) to obligations arising out of acts or faults of the owner of the vessel." Counsel for the respondents here makes no objection to the consideration of this latter provision of the French statute.

It will be noted that in the wording of Article 1 the liability is limited in favor of a vessel *owner* only; but by Article 10 the applicability of the statute is extended to the operator or principal charterer of the vessel, even if not the owner. In the case here Mowinckels was not the owner of the vessel and it is at least doubtful that

it could be considered the principal charterer or operator of the Ocean Liberty, which was owned by a Norwegian corporation and chartered principally, it may be said, to "Saguenay" and by the latter subchartered for a particular voyage to Mowinckels; and the vessel was manned by a crew furnished by the owner and the crew was not victualed by Mowinckels. But if it be assumed that Mowinckels' relation to the Ocean Liberty was sufficient to make the French statute otherwise applicable to it, Article 2 of the statute above quoted withdraws the protection of the statute from liability for "acts or faults of the owner of the vessel".

It is to be noted that the amendment of the answer alleges that the liability sought to be enforced "did not arise out of acts or faults committed by or with the privity of the owner of the vessel or by or with the privity of the respondent or either of them." On the reason now being discussed for sustaining the exceptions (equivalent to a demurrer) the last referred to averment of the answer would have been accepted as true if contained in the original answer, but, after the finding of the court on the facts that the carrier was at fault and therefore liable, (which finding for the present must be accepted as correct) the averment to the contrary should be disregarded.

Counsel for Mowinckels argues that if the exceptions be overruled and proof submitted as to the content and nature of the French statute, it may be possible to show a difference or distinction between the kind of "fault" referred to in the statute and the nature and kind of fault heretofore found by this court committed by Mowinckels. In an attempted support of this possible distinction counsel refer to Providence & New York S. S. Co. v. Hill Mfg. Co., 109 U.S. 578, 3 S.Ct. 379, 380, 27 L.Ed. 1038, where the Supreme Court pointed out that there might be found to be a difference between the content of the word "neglect" appearing in one section of the United States statute there involved and the phrase "privity or knowledge of such owner" contained in another section. And it is said that the decision in that case was approved by the court in LaBourgogne, 210 U.S. 95, 120–123, 28 S.Ct. 664, 52 L.Ed. 973 and to the same effect is Hines v. Butler, 4 Cir., 278 F. 877–880. But I do not think the cases cited sustained the contention. The possibility of different signification of "neglect" on the one hand as contrasted with "privity or knowledge" on the other is quite understandable. But I find it difficult to see how "fault" as used in the French statute relating to limitation of a ship owner's liability, can have any different meaning from the finding of the existence of fault on the part of Mowinckels arising under the Carriage of Goods by Sea Act, as found by the former opinion in this case. It is true, of course, that the word "fault" appears in the English translation of the original Convention in another language, probably French. But I have no reason to assume for the purposes of the present discussion that there is any mis-translation of the word or that the French word originally used has a different connotation with respect to the subject matter to which it is applied, that is, the ship owner's liability.

It is therefore Ordered by the court this 31st day of October, 1951 that the exceptions to the amended answer be and the same are hereby *sustained*.