286 F.2d 684
 LADY NELSON, LTD., and Canadian National (West Indies) Steamships, Ltd., Libelants-Appellants-Cross-Appellees,
v.
CREOLE PETROLEUM CORPORATION and The Barge 75-8, Claimant-Respondent-Appellee-Cross-Appellant.
CREOLE PETROLEUM CORPORATION, Libelant-Appellee-Cross-Appellant,
v.
LADY NELSON, LTD., and Canadian National (West Indies) Steamships, Ltd., Respondents - Appellants - Cross - Appellees.
 No. 126.
 No. 127.
 Docket 26266.
 Docket 26267.
 United States Court of Appeals Second Circuit.
 Argued December 16, 1960.
 Decided January 19, 1961.
 
 Eugene Underwood of Burlingham, Hupper & Kennedy, New York City (H. Barton Williams, New York City, of counsel), for appellants.
 Raymond T. Greene of Kirlin, Campbell & Keating, New York City (Stephen J. Buckley, New York City, of counsel), for appellee.
 Before LUMBARD, Chief Judge, and MAGRUDER and FRIENDLY, Circuit Judges.
 FRIENDLY, Circuit Judge.
 
 
 1
 These appeals relate to the collision, in Trinidad territorial waters, between the Canadian passenger steamship Lady Nelson, owned by Lady Nelson, Ltd. and Canadian National (West Indies) Steamships, Ltd., hereafter Lady Nelson, Ltd., and the Venezuelan barge 75-8 owned by Creole Petroleum Corp., with which this Court dealt in Lady Nelson, Ltd. v. Creole Petroleum Corp., 2 Cir., 1955, 224 F.2d 591, 595. On that appeal the majority, in an opinion written by Judge Hastie of the Third Circuit and concurred in by Judge Frank, over a dissent by Judge Clark, held both vessels to blame. Accordingly the Court concluded "that damages must be divided," reversed an interlocutory decree holding the barge and its owner solely at fault, and remanded the cause to the District Court for further consistent proceedings. There Judge Edelstein, on October 27, 1955, entered an "Interlocutory Decree on Mandate," submitted by Creole on notice to Lady Nelson, Ltd., which did not oppose, directing that each libelant recover one-half of its damages from the other. Certiorari was denied January 9, 1956, 350 U.S. 935, 76 S.Ct. 308, 100 L.Ed. 817.
 
 
 2
 Two and a quarter years later the proctors for Lady Nelson, Ltd. moved to vacate the Interlocutory Decree on Mandate insofar as it provided that the damages be divided on the basis of equal fault and for an order referring the case to Judge Noonan "to determine, on the record, in accordance with the applicable law of Trinidad the proportion of fault committed, and damages to be borne, by each of the parties hereto * * *." The only explanation made for the long delay was that proctors for both parties had been examining the damage claims "and an agreement on the amount of damages sustained by each is believed to be imminent." The motion came before Judge Bicks. After ascertaining that Judge Edelstein, having merely signed a proposed decree to which no objection had been made, did not request reference of the motion, Judge Bicks modified the Interlocutory Decree on Mandate to provide simply "that the damages must be divided," believing that clarification of the mandate, if such were needed, was for this Court rather than for the District Court.
 
 
 3
 Proctors for Lady Nelson, Ltd. thereupon moved this Court for an order recalling the previous opinion and judgment and amending and clarifying it either to hold the Barge 75-8 ninety per cent and Lady Nelson ten per cent at fault or, in the alternative, to direct the District Court "to refer the matter to the trial judge for determination of the proportion of fault to be borne by each vessel." Upon this motion a panel, consisting of Judges Clark, Hincks and Lumbard, made the following order on December 11, 1958:
 
 
 4
 "Motion denied. It is apparent to us that the issue of division of damages according to British law was not considered or decided. Hence the orderly course would seem to be for the district court to make its rulings and then aggrieved parties may appeal in the regular way."
 
 
 5
 Proctors for Lady Nelson, Ltd. applied for a trial assignment in the District Court and the case was referred to Judge Noonan for trial. On June 30, 1959, an informal hearing was held in his chambers; the Court was handed an official copy of the British Maritime Conventions Act, 1911, and heard argument. Later, briefs were exchanged. On August 7, 1959, Judge Noonan made further findings of fact and conclusions of law to the effect that although Trinidad law should govern the division of damages, no proof of that law had been offered, hence United States law should prevail and damages should be divided equally. Proctors for Lady Nelson, Ltd. moved for reargument or in the alternative for leave to submit further proof of the Trinidad law. Judge Noonan granted reargument but adhered to his decision. A final decree was entered fixing damages of Lady Nelson, Ltd. at $80,000 and of Creole at $50,000 and directing that Lady Nelson, Ltd. recover from Creole $15,000, together with interest from July 31, 1958, the date when the amount of damages had been fixed by stipulation. Lady Nelson, Ltd. appeals from so much of the decree as divides the damages equally and Creole from the allowance of interest antedating the decree.
 
 
 6
 How damages in a both-to-blame collision in foreign territorial waters should be apportioned is governed by the lex loci, here Trinidad, The Mandu, 114 F.2d 361, 2 Cir., certiorari denied, Great American Ins. Co. v. Companhia de Nav. etc., 1940, 311 U.S. 715, 61 S.Ct. 397, 85 L.Ed. 466; Griffin on Collision, § 26(2). We cannot agree that the proof that Trinidad law embodied the proportionate fault rule, which was made at the hearing on June 30, 1959, was insufficient — if this was what the judge held, as, seemingly, he did. The deposition of the Trinidad lawyer introduced at the initial trial had listed the Maritime Conventions Act, 1911, § 1 of which embodies the proportional fault rule of the Brussels Convention, as among the governing laws of Trinidad, — although this reference was in no way related to the division of damages. The remaining problem was to prove the text. To that end, at the hearing on June 30, 1959, proctors for Lady Nelson, Ltd. tendered a photostatic copy of the title page and pages 453-456 of "The Law Reports — The Public General Statutes, Passed in the First and Second Years of the Reign of His Majesty King George the Fifth, 1911, Vol. XLIX," with the title page bearing a facsimile of the royal coat of arms and the imprint: "London: Printed by Eyre & Spottiswoode, Ltd., for Rowland Bailey, Esq., C. B., M. V. O., Printer to His Majesty of all Acts of Parliament, And Published by the Council of Law Reporting, 10, Old Square, Lincoln's Inn, W. C. — 1911," and also two imprints, "Library of the New York Law Institute." The book itself was in the court room for comparison.
 
 
 7
 If this were a civil action, that would plainly have sufficed. For, as held in Siegelman v. Cunard White Star, Ltd., 2 Cir., 1955, 221 F.2d 189, 196-197, even if that decision were deemed to have been limited by Walton v. Arabian American Oil Co., 2 Cir., 233 F.2d 541, 544, certiorari denied 1956, 352 U.S. 872, 77 S.Ct. 97, 1 L.Ed.2d 77, F.R.Civ.Proc. 43(a), 28 U.S.C.A., would have made applicable Section 344-a, subd. A, par. 1, of the New York Civil Practice Act, which would have permitted the Court to take judicial notice of the British statute. Creole says a different result must be reached here, since F.R.Civ.Proc. 43(a) does not apply in admiralty, F.R.Civ. Proc. 81(a), and hence the Court had no tool with which to grasp the New York judicial notice statute. There is authority going back to The Amelia, 1801, 1 Cranch 1, 38, 2 L.Ed. 15, for admiralty courts to take judicial notice of certain foreign statutes, see The Scotia, 1872, 14 Wall. 170, 188, 20 L.Ed. 822; The Belgenland, 1885, 114 U.S. 355, 370, 58 S.Ct. 860, 29 L.Ed. 152; Richelieu & Ontario Navigation Co. v. Boston Marine Ins. Co., 1890, 136 U.S. 408, 422, 10 S.Ct. 934, 34 L.Ed. 398; The New York, 1899, 175 U.S. 187, 195-197, 20 S.Ct. 67, 44 L. Ed. 126, but this seems to have been limited to foreign laws that had been officially received by the United States in some way or to international rules to which the United States was also a party. It is, indeed, more than a mite incongruous that a surrogate in Chemung County may take judicial notice of a recent statute of Liechtenstein but an admiralty judge in New York may not "know" that Great Britain has adhered for nearly half a century to a rule as to the division of liability embodied in a convention accepted by some 30 nations, see Marsden, Collision at Sea (10th ed. 1953), pp. 813-814, — something in fact known to all admiralty lawyers and many others. At some time we may have to inquire whether the admiralty ought not shake off its self-imposed shackles with respect to judicial notice of foreign law, or at least loosen them to the extent that seems suggested in Black Diamond S. S. Co. v. Robert Stewart & Sons, Ltd., 1949, 336 U.S. 386, 396-397, 69 S.Ct. 622, 93 L.Ed. 754. However, we need not make that inquiry here since the proof of the Maritime Conventions Act, 1911, was sufficient in the absence of timely objections making a colorable claim of lack of authenticity.
 
 
 8
 Although Lord Brougham's decision in the Sussex Peerage case, 11 Cl. & F. 115 (1844), established in England that a rule of foreign law must be proved by calling an expert witness and not by merely producing a copy of the legislative text, see Lazard Bros. & Co. v. Midland Bank, Ltd., [1933] A.C. 289, 298, Wigmore tells us "as an inflexible rule it cannot be approved," 7 Wigmore, Evidence (3d ed.) § 2090a. He states also that while there was a division of opinion in this country whether a foreign statute could be proved by merely producing a copy purporting to have been officially printed, "before any full and detailed development of principle had taken place in the courts, statutes intervened, in almost every jurisdiction, to provide a definite and liberal rule," 5 Wigmore, Evidence (3d ed.) § 1684, at p. 846. Courts should not be altogether blind to so general a trend, and there could hardly be a more appropriate case than the present for following the legislative lead. Anyone would accept the book offered by Lady Nelson, Ltd.'s proctors as sufficient evidence of the text in advising a client or in interpreting the opinion of a British court; it would be sheer formalism to require a further deposition to establish authenticity of a text that can be found not merely in the official report produced before the judge but in many other publications in law libraries. The Pawashick, D.C.D.Mass.1872, 19 Fed.Cas.No. 10,851; The Atlanta, D.C.S.D.Ga.1948, 82 F.Supp. 218, 235-237. It is immaterial that the hearing before Judge Noonan was not designated as a trial; the judge considered it to be a proceeding for the determination of the "fact" of Trinidad law, as witness his further findings of fact and conclusions of law.
 
 
 9
 However, Lady Nelson, Ltd.'s effort now to have damages divided on the basis of proportionate fault and to prove the text of the Maritime Conventions Act, 1911, to that end ought to have been rejected on the ground that all this should have been developed at the initial trial; and Creole may support the decree on that basis although it does not appear to have been the ground taken by the judge, United States v. American Railway Express Co., 1924, 265 U.S. 425, 435, 44 S.Ct. 560, 68 L.Ed. 1087; Langnes v. Green, 1931, 282 U.S. 531, 537, 51 S.Ct. 243, 75 L.Ed. 520.
 
 
 10
 Creole's cross-libel raised the issue of Lady Nelson, Ltd.'s liability, and consequently of the proportion of the total damage Lady Nelson, Ltd. must bear. It was incumbent on Lady Nelson, Ltd. to place before the Court at the trial of the libels all matters having a bearing on what that proportion should be — whether 0%, 50%, 100%, the only figures recognized by United States law, or some others if a different rule of law were applicable. Yet Lady Nelson, Ltd. does not claim that at any time during that trial or in the appeal to this Court, it adverted to the proportionate damage rule; indeed, it submitted to an Interlocutory Decree on Mandate dividing damages equally and sought no change for over two years.
 
 
 11
 Lady Nelson, Ltd. seeks to excuse its delay in raising the issue of proportionate fault on two bases — that it is admiralty practice to defer the determination of damages in collision cases until the issue of liability has been settled, see 3 Benedict, Admiralty (6th ed., Knauth 1940), § 411, and that at the initial trial it was claiming entire freedom from fault. We do not find these arguments impressive either alone or in combination. It was no more necessary to await determination of the amount of damages to fix Lady Nelson, Ltd.'s share under the proportionate fault rule than under the equal division rule; arithmetic can perform the feat of applying 10% to the sum of the damages, as readily as 50%. Although it may have been good trial strategy for the Lady Nelson to have asserted complete absence of fault without suggesting the application of a rule that would have permitted assessment of a share less than 50%, parties are not normally free to take a second bite at the cherry. If Judge Noonan had found both vessels to blame on the initial trial, he surely would not have allowed Lady Nelson, Ltd. to introduce the proportionate fault concept after decision had gone against it; we see no reason for a different result because of its initial, but temporary, success. Furthermore, one of the merits of the rule of the Brussels Convention permitting damages to be divided on other than an equal basis is that it avoids the vagaries of the "major-minor fault rule," developed by our law as a "sop to Cerberus," see National Bulk Carriers, Inc. v. United States, 2 Cir., 183 F.2d 405, 410 (L. Hand, J., dissenting), certiorari denied, 1950, 340 U.S. 865, 71 S.Ct. 89, 95 L.Ed. 631; Gilmore & Black, The Law of Admiralty, pp. 402-404, 438-442; it would be most unwise to sanction a procedure that would allow a vessel first to invoke this United States rule to escape a liability that might be imposed under the rule of proportionate fault and then to take advantage of that rule after its endeavor failed. Lady Nelson, Ltd. had to choose at the first trial between having its degree of liability, if any, assessed under the law of Trinidad, with the proportionate fault rule, or under the law of the United States, with its equal division rule, which would be assumed to apply in the absence of assertion and proof of the former. The Scotland, 1882, 105 U.S. 24, 29, 26 L.Ed. 1001. Having made its choice, even by inaction, it cannot now change.
 
 
 12
 Lady Nelson, Ltd. says that, even if all this were true in general, the panel of this Court that passed on its motion two years ago established a different rule for this case. However, its construction of the earlier ruling is erroneous.
 
 
 13
 Lady Nelson's motion was denied, not granted. The remark "that the issue of division of damages according to British law was not considered or decided" was a statement of fact — not a holding of law that Lady Nelson, Ltd. either was or was not free to raise the issue now. The Court refused at that juncture to intrude on the proceedings pending in the District Court pursuant to Judge Bicks' modification of the interlocutory decree. It based its decision on the desire to have the parties proceed in an "orderly course" and to require them, upon determination of the issue of damages to "appeal in the regular way." The Court decided only that since the issue whether Lady Nelson, Ltd. could avail itself of the proportionate fault rule was not considered in the Court's earlier decision, Lady Nelson, Ltd. was free to attempt to raise it now. It did not decide whether that attempt would succeed or fail, but held that the trial court would not violate the mandate of this Court by considering the appellant's contention. We now decide that this contention was raised too late.
 
 
 14
 There remains Creole's appeal from the allowance of interest prior to the decree. Creole's contention that this Court's decisions in The Wright, 2 Cir., 1940, 109 F.2d 699, and Canadian Aviator, Ltd. v. United States, 1950, 187 F.2d 100, certiorari denied 1951, 342 U.S. 813, 72 S.Ct. 27, 96 L.Ed. 615, had excluded all discretion to award pre-decree interest in mutual fault collision cases cannot survive our decision, made since the argument here, in Afran Transport Co. v. M/T Bergechief, 1960, 285 F.2d 119. The allowance of interest on the $15,000 awarded Lady Nelson, Ltd. on the basis of equal division of liability from the date when the amount of the damages was determined was an appropriate exercise of the District Court's discretion.
 
 
 15
 Affirmed. No costs on these appeals.